### No. 26057

Charles Satter, Muriel Satter, Charles L. Binna, Flora Binna, Carolyn S. Ashbaugh, Varian L. Ashbaugh v. City of Littleton, a home rule city existing under a charter as authorized by Article XX, Constitution of Colorado; and City Council of the City of Littleton

### No. 26057
### No. 26064

Charlotte W. Cobb, Berniece M. Cobb, Ira B. Baker, Daisy E. Baker, Irwin C. Elliott, Lucille E. Elliott, Jack G. McKinnies, Joyce C. McKinnies, Roy R. Vogt, Dorothy J. Vogt, W. Charles Kettle and Margaret M. Kettle v. The City of Littleton, a home rule city; The City Council of the City of Littleton; W. H. Wallace, County Assessor of the County of Arapahoe; and Paul W. Wolf, County Treasurer of the County of Arapahoe

### No. 26064

George K. Nielsen and Ann H. Nielsen v. Larry C. Borger, et al., and the City of Littleton

### No. 26060

Tom O. Bradbury, Gladys C. Bradbury, and Ray O. Brad-

bury, Trustee v. City of Littleton, Colorado, A Municipal Corporation Existing Under and by Virtue of the Laws of the State of Colorado; "City of Littleton, Colorado Improvement District No. 70-2"; and Kenneth Pearson

(522 P.2d 95)

Decided May 13, 1974.

Wallace, Armatas and Hahn, Harvey P. Wallace, C. Thomas Bastien, George K. Nielsen, Quiat and Quiat, P.C., James C. Bull, for plaintiffs-appellants.

Alan L. Sternberg, for defendants-appellees.

MR. JUSTICE LEE delivered the opinion of the Court.

In these consolidated cases, appellants, who are property owners in the city of Littleton, challenge the validity of special assessments levied against their property for street improvements. The district court rendered judgment for the city. We affirm.

Littleton is a home rule city, operating under a charter pursuant to Article XX, Section 6, of the Colorado Constitution. Section 92 of the home rule charter empowers the city to create local improvement districts, and to construct special improvements and assess the costs thereof to properties within the district specially benefited thereby.

Pursuant to this charter provision, the city council enacted a Local Improvements Law in 1962, providing procedures for the creation of special improvement districts, issuance of bonds, and assessment of the costs. *Littleton Municipal Code,* art. II, § § 11.31 through 11.116.

The ordinance authorizes assessment of costs against any tract of land within the district, to the extent it is specially benefited by a public improvement and provides that assessments shall be made on a front-foot, zone, area or other equitable basis as the council may determine. *Littleton*

*Municipal Code,* art. II, §§ 11.34(3), 11.42(B), 11.68. Commencing in 1963, the city embarked on a street repaving program. Some seven street improvement districts, employing roughly the same formula for determining the city's share of the cost, were created from 1963 to 1970, and approximately eleven miles were paved.

On January 6, 1970, the city council took initial steps by Resolution No. 1, Series of 1970, towards creation of Street Improvement District No. 70-2, which would provide for the paving of approximately twelve miles of streets. The city submitted a proposed bond issue to the voters for the city's share of the cost. The bond issue passed, and notices were sent to the affected property owners for a public hearing on the advisability of creation of the district.

Public hearings were held on May 12 and May 14, 1970, during which many of the residents bordering Ridge Road, Elati and Windemere Streets registered their protests, both written and verbal. Their principal complaints were that there was no need for repaving but only a need for certain maintenance work; that the proposed sidewalks and curbs would destroy the essentially rural nature of the area; that the contemplated increased traffic resulting from the repaving would be detrimental to the area; and that no conceivable benefits, equal to the cost of the proposed assessments, would inure to the residents. The property owners, however, submitted no evidence other than their own statements and opinions concerning the undesirability of the proposed project. No expert testimony was offered to support their protests and objections that their respective properties would not be benefited by the proposed project.

As a result of the hearings, certain modifications in the project were made. The council then passed Ordinance No. 10, Series of 1970, creating the district. The improvements were constructed during the summer of 1970. Thereafter, as required by ordinance, the city again sent notices to the affected property owners of the assessment hearing, at which complaints, protests and objections, both written and verbal, could be made to the proposed assessments and to the

assessment roll. Appellants appeared in person and by counsel and in a general way reiterated their objections that the improvements conferred no special benefits upon their properties. They again failed to present evidence or to present expert testimony to support these assertions.

Thereafter, another resolution was adopted by the council, modifying the assessment roll, and Ordinance No. 33, Series of 1971, imposing the special assessments, was then passed by the council. The ordinance recited that the total cost of improvements in the district was approximately $465,000 and of that, about $176,000 (or 38%) was assessed against property within the district. The city assumed the balance out of the sale of general obligation bonds. Appellants' share of the special assessments totaled $14,690.52.

Five separate actions were filed in the district court attacking the creation of the local improvement district, seeking to have it declared void, and praying for injunctive relief against the collection of the special assessments. These actions were consolidated for trial.

The court granted a *de novo* hearing, after which extensive findings of fact and conclusions of law were entered. The relief prayed for as to certain plaintiffs was granted on the basis that they had not received proper notices as required by the Local Improvement Law. As to the remaining plaintiffs, including these appellants, relief was denied and judgments of dismissal were entered. Among other findings, the court found that all procedural requirements for the enactment of the ordinance creating the improvement district and the assessment ordinance had been fully complied with. The court also entered the following critical finding:

"The Court is convinced, after hearing the testimony of the appraisers and of some property owners (e.g., Mrs. Ashbaugh), that paving of the streets in question conferred a general benefit to the City at large, and conferred a special benefit to the real property within the District in an amount at least equal to the amount of the assessment."

In its conclusions of law, the court stated:

"The actions of the City Council in this case are final and

conclusive, in the absence of a showing of fraud, corruption, or conduct so oppressive, arbitrary, or capricious as to amount to fraud, and there has been no evidence of such presented by the Plaintiffs.

"The question of whether a specific property is specially benefited by an improvement is a matter of opinion, and the determination of the appropriate municipal authorities, being a legislative one, and being based on competent evidence, will not be overturned by this Court."

It is appropriate to note here that the trial court did not have the benefit of our decision in *Orchard Court Development Co. v. City of Boulder,* 182 Colo. 361, 513 P.2d 199. There, we held that the right to appeal to the courts from a special assessment for public improvements does not exist except by statute, and in the case of a home rule city by charter and ordinance. As in *Orchard Court,* we are here concerned with a home rule city whose charter and ordinances do not prescribe the character of the permitted court review or the extent thereof. This is in contrast with C.R.S. 1963, 89-2-38, which applies to statutory cities and which provides a limited remedy of review by the courts. In *Orchard Court* we held, therefore, that the appropriate remedy under the present circumstances was review in the nature of certiorari under C.R.C.P. 106(a)(4).

We have reviewed the *de novo* record in the district court and find that the record supports the findings, conclusions and judgment entered by the court. We have also reviewed the record of city council proceedings in the enactment of the ordinance creating the local improvement district and the assessment ordinance, and we also find that the record discloses no arbitrary, capricious, fraudulent or unreasonable conduct in the creating of the district or in the imposition of the special assessments complained of, nor any constitutional deprivations.

Appellants' assertions of error fall into two categories. First, no special benefits were received from the paving program; if there were any, they were not equal to the special assessments imposed; and as such the assessment was arbi-

trary and capricious. Second, there were alleged procedural defects in the adoption of the ordinance which amounted to a denial of due process.

I.

Appellants contend, and we agree, that to sustain a special assessment it must appear that a benefit has been occasioned to the premises assessed, at least equal to the burden imposed. *Fort Lupton v. U.P.R.R. Co.,* 156 Colo. 352, 399 P.2d 248; *Denver v. Greenspoon,* 140 Colo. 402, 344 P.2d 679; *Sante Fe Co. v. Denver,* 89 Colo. 309, 2 P.2d 238; *Pomeroy v. Pueblo,* 55 Colo. 476, 136 P. 78.

Nevertheless, a presumption of validity inheres in a city council's determination that the benefits specially accruing to properties equal or exceed the assessments thereon. *Orchard Court Development Co. v. City of Boulder,* 182 Colo. 361, 513 P.2d 199; *Denver v. Greenspoon, supra.* The burden is on the property owners to affirmatively show to the council, by substantial competent evidence, that the contrary is true.

It is clear from the record before the city council that at the initial hearing on the creation of the improvement district appellants did not make a sufficient affirmative showing that the special assessments exceeded the special benefits to their properties. Their presentation consisted only of conclusory opinions unsupported by any evidence, expert or otherwise. At the second hearing, on the assessment roll, their presentation was considerably more brief, still without evidence or testimony to support their position. In our view, they failed to carry their burden of overcoming the presumption of validity attending the assessment actually imposed. *Orchard Court Development Co. v. City of Boulder, supra.*

Appellants quarrel with the front-foot, side-foot formula applied by the city in determining the amount of the assessments. Such a formula has long been approved as an essentially fair method of apportionment of paving costs. *Denver City v. Knowles,* 17 Colo. 204, 30 P. 1041. In that case, the property owners were assessed two-thirds of the total costs of the paving on a front-foot basis, with the city

paying the remaining one-third of the cost. In contrast in this case, the property owners were assessed for only approximately one-third of the total cost on a front-foot, side-foot basis, whereas the city paid the balance of two-thirds of the total cost. In *Teutsch v. City of Santa Fe,* 75 N.M. 717, 410 P.2d 742, relied upon by appellants, the *total cost* of the improvements was assessed to the adjacent property owners on a front-foot, side-foot basis. We do not find *Teutsch* to be persuasive.

The standard of apportionment of local improvement costs to benefits received is not one of absolute equality, but rather one of reasonable approximation, as is more fully discussed in *Orchard Court, supra,* and the cases cited therein. When the legislative body charged with the duty of apportioning improvement costs prescribed, in good faith, a formula designed to produce a reasonable approximation of assessments to benefits, the results obtained should not be disturbed absent fraud or unreasonableness in the apportionment process. Here, there was no allegation of fraud; and there has been no demonstration that the assessments were unreasonable.[1]

## II.

Appellants assert a variety of procedural defects. First, they contend that the initial resolution directing the city engineer to perform the functions prescribed by section 11.38 of the Local Improvement Law was deficient in detail. We agree that it was lacking in detailed specifications. The duties enjoined upon the engineer, however, were performed and no prejudice to appellants was shown by reason of this deficiency.

Next, appellants contend the assessments must fall because the assessment plat did not show "the amount of the maximum benefit estimated to be assessed against each tract in said assessment area," as required by the Local Improvement Law. Again, no prejudice was shown to appellants, inasmuch as this information was available to the property

---

[1] The fact that the depth of lots was not a factor in making the assessments is not an issue in this case.

owners for inspection, as was the assessment plat. Additionally, appellants were made aware of the proposed assessments prior to the public hearing on creation of the proposed district, by notice mailed to them. While we do not approve the failure of the city administration to strictly follow its ordained procedures, we find this to be an insufficient reason to invalidate the assessments under the circumstances here involved.

Further, appellants contend that the city council, at the first public hearing on the creation of the improvement district, denied them due process in limiting their right to cross-examine the city engineer concerning the proposed assessments and special benefits to their properties. The attorney for appellants was inquiring of the city engineer concerning his explanation of Assessment Unit No. 4, in which appellants' properties were situated. His questioning was circumscribed by the presiding officer, who deemed counsel's questions irrelevant to the purposes of that hearing, that of hearing and determining of complaints, protests and objections to the creation of the improvement district. Counsel was permitted, however, to make an extensive statement and argument. His position was that the burden was on the city to affirmatively show the extent of the special benefits. This was incorrect, as noted before. The burden was on appellants, not on the city. Considered as an offer of proof, counsel's statement was insufficient in our view, as it did not detail any evidence that these appellants might offer in support of their contentions.

Again, at the later public hearing on the assessment roll, the same ruling was made, and counsel briefly reiterated his prior position. Significantly, no evidence was tendered to support his clients' allegations. The record discloses no refusal by the city council to receive testimony, expert or lay, concerning the special assessments and related benefits to the properties involved. While the ruling of the presiding officer appears a narrow one, in view of the burden cast upon appellants to affirmatively show a lack of special benefits, and their failure to tender evidence in support of their

position, we conclude that appellants were not denied due process in these circumstances.

Appellants also contend they were denied due process because they were not given notice by mail of the council meetings at which the ordinances creating the district and levying the assessments were adopted. It is not disputed that they received mailed notices of the hearings preliminary to the creation of the special improvement district and the adoption of the assessment roll. The answer to this contention is that neither the city charter generally, nor the Local Improvement Law, requires any departure from the usual procedure for adoption of ordinances merely because the subject of the ordinance concerns the creation of a local improvement district or the levy of a special assessment. Notice of the proposed adoption of the ordinances is required to be given by publication only and not by mailed notice to affected property owners. The procedures followed were in compliance with the requirements of the charter and the municipal code.

We have considered appellants' other contentions of error and find them to be without merit.

The judgment is affirmed.

MR. CHIEF JUSTICE PRINGLE does not participate.