**Arvid R. BLOOM and Beverly T. Bloom, Plaintiffs–Appellees,**

v.

**CITY OF FORT COLLINS, Defendant–Appellant.**

**No. 88SA162.**

Supreme Court of Colorado,
En Banc.

Dec. 18, 1989.

As Modified on Denial of Rehearing
Jan. 16, 1990.

Stephen J. Roy, Asst. City Atty., and Hale, Smith & Williams, Dave Williams, Fort Collins, for defendant-appellant.

Arthur E. March, Jr., J. Brad March, Harden, Schmidt, Hass & Zier, Rick Zier, Hasler & Fonfara, Joseph H. Fonfara, and James P. Johnson, Fort Collins, for plaintiffs-appellees.

Chief Justice QUINN delivered the Opinion of the Court.

The City of Fort Collins appeals from a district court judgment invalidating a city ordinance that imposes upon owners or occupants of any developed lots or parcels of land within the city a "transportation utility fee" for the purpose of providing reve-

nues for the maintenance of local streets and that authorizes the city council to transfer any excess revenues collected under the ordinance to any other fund of the city. The district court held that the transportation utility fee constituted an invalid property tax that did not conform to the uniformity requirement of article X, section 3 of the Colorado Constitution.[1] We hold that the transportation utility fee is not a property tax but rather is a special fee imposed upon owners or occupants of developed lots fronting city streets and that such fee, considered independently of the so-called "transfer" provision, is reasonably related to the expenses incurred by the city in carrying out its legitimate goal of maintaining an effective network of city streets. We also conclude that the "transfer" provision of the ordinance, to the extent it might be implemented by the city council, would have the effect of transforming the special fee into an impermissible tax but that the transfer provision is severable from the remainder of the ordinance. We accordingly reverse the judgment of the district court and remand the case for further proceedings on any remaining claims not resolved by this opinion.

## I.

Fort Collins is a home-rule city organized under article XX of the Colorado Constitution. On January 17, 1984, the city council enacted a transportation utility ordinance. Fort Collins City Code §§ 108A–1 to 108A–14 (1984).[2] The purpose of the ordinance is set forth in section 108A–1 as follows:

The Council hereby finds, determines and declares the necessity of providing maintenance and upkeep of the city's local streets and related facilities as a comprehensive Transportation Utility, with such maintenance to include, without limitation, the following activities: patching, crack sealing, seal coating, overlaying and other activities as are necessary in order that local streets and related facilities may be properly maintained and that the health, safety, and welfare of the city and its inhabitants may be safeguarded.

Section 108A–3 authorizes the city council to establish a transportation utility fee "to be paid by the owners or occupants of property within the corporate limits of the city," such fee to be in amounts "which will provide sufficient funds to properly maintain local streets."

The transportation utility fee is based upon the following factors, all of which are set out in section 108A–7 of the ordinance: "the amount of frontage in linear feet that each lot or parcel has on the right-of-way of an accepted street; the base rate maintenance cost of each foot of frontage; and the developed use of the property (which includes the amount of vehicular traffic generated by the property)." The frontage is determined by measuring the frontage of each lot or parcel along the right of way of the street on which the property is located. Fort Collins City Code § 108A–7(A) (1984). The base rate maintenance cost is set at $0.0143 per foot of frontage per month for all developed properties within the city. Fort Collins City Code § 108A–7(B) (1984). The ordinance requires the Director of Public Works to place each lot in a specific category of development, based on the actual land use of the lot. Fort Collins City Code § 108A–7(C) (1984). The categories of developed use include single-family residential, multi-family residential, and non-residential. *Id.* For each developed use there is a "traffic generation factor", which is as follows:

| Category of Use | Generation Factor |
|---|---|
| Single-family residential | 1.00 |
| Multifamily residential | 0.65 |
| Nonresidential | 4.00 |

Fort Collins City Code § 108A–7(D) (1984). The monthly fee for each lot or parcel is

---

**1.** Because the district court declared the ordinance unconstitutional, appellate jurisdiction lies in this court rather than the court of appeals. § 13–4–102(1)(b), 6A C.R.S. (1987).

**2.** In 1987 there was a complete recodification of the ordinances of the City of Fort Collins. The transportation utility ordinance is currently codified at article VIII, §§ 26–566 to 26–595, (Fort Collins City Code 1987). For simplicity, however, we refer to the initial codification given the ordinance after its enactment.

calculated in accordance with the following formula:

Monthly fee =(base rate) × (frontage) × (traffic generation factor).

Fort Collins City Code § 108A–7(E) (1984). The minimum charge for any lot or parcel is $.75 per month, and in the case of a multifamily residential lot, the monthly fee is not less than $.75 per month per dwelling unit nor more than $1.50 per month per dwelling unit. Fort Collins City Code § 108A–7(F) (1984).[3]

The fee is billed with the monthly utility bill for those lots utilizing city utilities, and is billed separately for lots not using such utilities. Fort Collins City Code § 108A–8 (1984). The owner of every lot or parcel subject to the fee is obligated to pay the fee, but in the event a tenant in possession pays the fee, the owner is relieved of the fee obligation. Fort Collins City Code § 108A–10 (1984).[4] Nonpayment of the fee subjects the user of city utilities to discontinuance of utility service. Fort Collins City Code § 108A–9 (1984).[5] All fees constitute a lien upon the property against which the fee is imposed. Fort Collins City Code § 108A–10(A) (1984).

Section 108A–13 of the ordinance provides for the disposition of the fees as follows:

The fees paid and collected by virtue of this chapter shall not be used for general or other governmental proprietary purposes of the city, except to pay for the equitable share of the cost of accounting, management and government thereof. Other than as described above, the fees and charges shall be used solely to pay for the cost of operation, administration, maintenance, repair, improvement, renewal, replacement and reconstruction of the local street network of the city and costs incidental thereto; *provided, however, that if there are amounts in excess of the amount required to satisfy the purpose of the fund, the City Council may, by ordinance, authorize the transfer of such excess amount to any other fund of the city* (emphasis added).

On or about April 1, 1984, the city began assessing the transportation utility fee. The fee generated between $450,000 and $500,000 per year, but street maintenance expenditures significantly exceeded the fees paid and collected. On April 3, 1985, Arvid and Beverly Bloom and several other owners or occupants of developed real property within the city filed a class action seeking declaratory and injunctive relief, as well as restitution of any monies paid pursuant to the ordinance, on the basis that the transportation utility fee was an invalid and unconstitutional tax. In its answer, the city claimed that the fee was validly enacted under the city's home-rule authority.

The district court certified the action as a class action in order to determine the validity of the ordinance in relation to the various categories of plaintiffs affected by the transportation utility fee. The plaintiffs and the city filed motions for summary judgment. The district court entered summary judgment in favor of the plaintiffs on the basis that the ordinance, although having a rational basis in fact and a valid purpose, nonetheless constituted a property tax in violation of the uniformity requirement of article X, section 3 of the Colorado Constitution. The court accordingly enjoined the city from collecting the transportation utility fee and ordered the city to

---

**3.** In the case of a single-family residential lot having frontage on more than one street, the fee is determined by dividing the total street frontage in half. Fort Collins City Code § 108A–7(F) (1984).

**4.** Section 108A–10(A) states in relevant part as follows:

The owner of every subject lot or parcel shall be obligated to pay the fee for all service provided for his property, which obligation may be enforced by the city by action at law or suit to enforce the lien. In the event that a tenant in possession of any premises shall pay said fee, such payment shall relieve the owner from such obligation and lien; but the city shall not be required to look to any person whomsoever other than the owner for the payment of such fees.

**5.** The ordinance contains a provision allowing elderly residents eligible for a property tax refund and a utility refund to apply for a refund of the transportation utility fee. Fort Collins City Code § 108A–14 (1984).

submit a plan for refund of all fees previously collected.

The city thereafter filed this appeal and basically contends that the transportation utility fee created by the ordinance does not constitute a property tax but, rather, is a special fee which is closely analogous to other municipal fees previously approved in prior decisions of this court.[6]

### II.

There are several measures for generating revenue available to a municipality for the purpose of deriving funds to carry out the city's public functions. The more common types, and the ones against which the transportation utility fee in this case must be measured, are an *ad valorem* tax, an excise tax, a special assessment, and a special fee.

An *ad valorem* tax is a tax upon various classes of real and personal property located within the territorial limits of the taxing authority. *See Cherry Hills Farms v. City of Cherry Hills*, 670 P.2d 779, 782 (Colo.1983); *Ochs v. Town of Hot Sulphur Springs*, 158 Colo. 456, 459, 407 P.2d 677, 679 (1965). Its purpose is to provide revenues in order to defray the general expenses of government as distinguished from the expense of a specific function or service. *See Zelinger v. City and County of Denver*, 724 P.2d 1356, 1358 (Colo.1986); *Western Heights Land Corp. v. City of Fort Collins*, 146 Colo. 464, 469, 362 P.2d 155, 158 (1961); *Ochs*, 158 Colo. at 459, 407 P.2d at 679.

Traditionally, the *ad valorem* property tax has been one of the mainstays of municipal revenue-raising. The Colorado Constitution expressly grants home rule municipalities "all powers necessary, requisite or proper for the government and administration of its local and municipal matters," including the power to legislate upon "[t]he assessment of property in such city or

town for municipal taxation and the levy and collection of taxes thereon for municipal purposes." Colo. Const. art. XX, § 6(g). Article X, section 3 of the Colorado Constitution requires any direct tax upon real or personal property to be "uniform," which means that the tax must be imposed uniformly or in like manner upon both real and personal property of the same class, according to assessed evaluation of the property. *Ochs*, 158 Colo. at 459, 407 P.2d at 679; *Gordon v. Wheatridge Water Dist.*, 107 Colo. 128, 135–37, 109 P.2d 899, 902–03 (1941). If a municipal tax is determined to be a property tax, therefore, such tax must be uniform upon each of the various classes of property within the territorial limits of the taxing authority and must be in accordance with the assessed valuation of the property subject to the tax. *Cherry Hills Farms*, 670 P.2d at 782; *Deluxe Theatres, Inc. v. City of Englewood*, 198 Colo. 85, 596 P.2d 771 (1979); *Walker v. Bedford*, 93 Colo. 400, 26 P.2d 1051 (1933).

In contrast to a direct tax on property, an excise tax is not based on the assessed value of the property subject to the tax but, instead, is imposed on a particular act, event, or occurrence. *E.g., Walker*, 93 Colo. at 403–07, 26 P.2d at 1052–53; *see* 16 McQuillin, *Municipal Corporations*, § 44.190 (3rd ed. 1984).

> The term "excise tax" has come to mean and include practically any tax which is not an *ad valorem* tax. An *ad valorem* tax is a tax imposed on the basis of the value of the article or thing taxed. An excise tax is a tax imposed on the performance of an act, the engaging in an occupation or the enjoyment of a privilege.

*Cherry Hills Farms*, 670 P.2d at 782. (quoting *Callaway v. City of Overland Park*, 211 Kan. 646, 508 P.2d 902, 907 (1972); *see also* 16 McQuillin, *Municipal Corporations* § 44.190 (3rd ed. 1984). The

---

**6.** The city also argues that the class action plaintiffs failed to pursue their administrative remedies under the ordinance and that their complaint, therefore, should have been dismissed. Section 108A–11 of the ordinance authorizes any owner who disputes the amount of the transportation utility fee to petition the Director of Transportation Services for a hearing on a revision or modification of the fee. The district court did not address the "exhaustion of administrative remedies" issue, and we do not address it in our opinion.

object of an excise tax, like that of an *ad valorem* property tax, is to provide revenue for the general expenses of government, but, unlike the *ad valorem* property tax, the payment of the excise tax is made a condition precedent to the act, event, or occurrence on which the tax is based. *Cherry Hills Farms*, 670 P.2d at 782.

To be distinguished from both a property tax and an excise tax is a special assessment. The essential characteristic of a special assessment is that it must confer some special benefit to the property assessed. O. Reynolds, Jr., *Local Government Law* § 99 (1982). A special assessment is "based on the premise that the property assessed is enhanced in value at least to the amount of the levy." *Reams v. City of Grand Junction*, 676 P.2d 1189, 1194 (Colo.1984). The burden of the assessment falls on the property owners because "the benefits they receive from the particular improvements are different from the benefits they enjoy in common with other property owners." *Id.* A special assessment for a local improvement, therefore, must specifically benefit or enhance the value of the premises assessed "in an amount at least equal to the burden imposed." *Id.; see also Satter v. City of Littleton*, 185 Colo. 90, 97, 522 P.2d 95, 98 (1974); *Pomroy v. Board of Public Waterworks*, 55 Colo. 476, 479, 136 P. 78, 80 (1913). The funds generated by a special assessment cannot be diverted to other purposes, since the imposition of the assessment "upon a particular class of taxpayers can be justified only to the extent that such taxes are equivalent to special benefits conferred upon those taxpayers." *Reams*, 676 P.2d at 1195.

Unlike a tax, a special fee is not designed to raise revenues to defray the general expenses of government, but rather is a charge imposed upon persons or property for the purpose of defraying the cost of a particular governmental service. *See* 1 T. Cooley, *The Law of Taxation* § 33

(4th ed. 1924); O. Reynolds, Jr. *Local Government Law* § 105. The amount of a special fee must be reasonably related to the overall cost of the service. *See Western Heights Land Corp.*, 146 Colo. at 464, 468–69, 362 P.2d at 158; O. Reynolds, Jr., *Local Government Law* § 105. Mathematical exactitude, however, is not required, and the particular mode adopted by a city in assessing the fee is generally a matter of legislative discretion. *See Western Heights Land Corp.*, 146 Colo. at 466–67, 362 P.2d at 155. An ordinance creating a special service fee, therefore, generally will be upheld as long as the ordinance is reasonably designed to defray the cost of the particular service rendered by the municipality. *See Loup–Miller Const. Co. v. City and County of Denver*, 676 P.2d 1170 (Colo.1984) (ordinance imposing sewage service fee upon apartment building owners upheld as a service fee reasonably related to objective of defraying cost of municipal sewage service); [7] *Vandiver v. Washington County*, 274 Ark. 561, 628 S.W.2d 1 (1982) (ordinance imposing annual fee on each household to meet cost of providing emergency medical services, except households served by another emergency service company, upheld as a valid fee); *Pennell v. City of San Jose*, 42 Cal.3d 365, 228 Cal.Rptr. 726, 721 P.2d 1111 (1986) (annual fee of $3.75, imposed on each rental unit to defray cost of administering hearing process in connection with rental disputes, upheld as valid regulatory fee); *Parking Authority of Trenton v. Trenton*, 40 N.J. 251, 191 A.2d 289, (1963) (building permit fee upheld as valid, since fee was reasonably designed to defray costs of municipal regulation in exercise of city's police power). A special fee, however, might be subject to invalidation as a tax when the principal purpose of the fee is to raise revenues for general municipal purposes rather than to defray the expenses of the particular service for which the fee is imposed. *See Zelinger*, 724 P.2d 1356 (city

---

7. *Loup–Miller* also involved an ordinance imposing a facilities development fee upon apartment buildings for new connections to the city's sewer system. In upholding the fee, we noted that "[t]here is nothing in the record to suggest

that the funds generated by the fee have been used otherwise," and also noted that the fee was directly related to the need for the increased capacity necessary to service new sewer connections. 676 P.2d at 1174–75.

ordinance creating a storm drainage service charge not a tax, since sole objective of ordinance was to raise funds to pay expenses attributable to municipal storm drainage activities and not to raise revenues for general municipal purposes). At least one court has invalidated a special fee—an "augmented fire service fee" imposed on owners of certain buildings based on the size and type of construction, and other characteristics of the building—on the basis that the service was not sufficiently particularized to justify the distribution of costs among the limited group of persons liable for the fee, rather than among the general public. *Emerson College v. City of Boston*, 391 Mass. 415, 462 N.E.2d 1098 (1984).

It is against the backdrop of these general principles and relevant law that we must determine whether the transportation utility fee involved in this case can pass legal muster as a valid municipal charge for the maintenance of the city streets of Fort Collins.

### III.

■ In concluding that the transportation utility fee was a property tax violative of the uniformity requirement of article X, section 3 of the Colorado Constitution, the district court delineated the following features of the ordinance as a predicate for its conclusion: the imposition of the fee upon developed lots and the owners and occupants of such lots; the creation of a lien against the lot for any unpaid fee; the requirement that the revenues generated by the fee be utilized for street maintenance but not for any specific property; and the authorization to city council to transfer any excess funds to any other fund in the city. In our view, these characteristics of the ordinance do not support the conclusion that the transportation utility fee is a property tax subject to the uniformity requirement of article X, section 3 of the Colorado Constitution.

It is true that a tax levied directly upon properties must be *ad valorem*—that is, it must be based on the relative valuations of the properties to which the tax applies.

*E.g., Ochs*, 158 Colo. at 459, 407 P.2d at 679; *Walker*, 93 Colo. at 403–07, 26 P.2d at 1052–53, O. Reynolds, Jr., *Local Government Law* § 96; *Black's Law Dictionary* 48 (5th ed. 1979). An ordinance imposing on property owners a charge calculated on the basis of the value of the property would be a direct tax on the property. *See Walker*, 93 Colo. at 405, 26 P.2d at 1053. The transportation utility fee at issue here is not based upon the value of the developed lot subject to the fee, nor does the fee fluctuate with the assessed value of the lot. Rather, the fee varies with the amount of the lot's street frontage and the "traffic generation factor" (or estimated street usage) applicable to the lot. The amount of the fee is thus the product of the base rate of $.0143 multiplied by the amount of street frontage and multiplied again by the traffic generation factor applicable to the developed lot. Fort Collins City Code § 108A–7 (1984). Furthermore, the ordinance authorizes the imposition of the fee upon a non-owner occupant of a developed lot, with the proviso that if the non-owner occupant does not pay the fee the city may look to the owner for ultimate payment. Fort Collins City Code §§ 108A–3 & 108A–10(A) (1984).

We are satisfied that the incidents and effects of the transportation utility fee are not such as to qualify the fee as a direct tax on property under Colorado law. It therefore follows that the district court erred in holding that the city ordinance violated the uniformity requirement made expressly applicable to property taxes by article X, section 3 of the Colorado Constitution.

### IV.

Having determined that the transportation utility fee is not a property tax, we must now determine what the transportation utility fee actually is. There are three types of municipal charges for which the transportation utility fee could possibly qualify: an excise tax, a special assessment, and a service fee. We consider each of these categories in turn.

### A.

An excise tax is a form of tax imposed on the performance of some act, event, or occurrence, with the tax itself made a condition precedent to the act, event, or occurrence. *See, e.g., Cherry Hills Farms,* 670 P.2d at 782. While the transportation utility fee at issue here is imposed on all owners or occupants of developed property fronting a public right of way, it is not conditioned on the performance of an act, event, or occurrence. Nor can it reasonably be argued that the ownership or occupancy of a house fronting a public street is analogous to some form of special privilege, such as undertaking a construction project or engaging in an occupation, for which an excise tax might be imposed.

### B.

We next consider whether the transportation utility fee is a special assessment. Although the assessments against individual properties are based upon the base rate of $.0143 multiplied by the street frontage and the traffic generation factor applicable to the developed lot, there is nothing in the ordinance requiring that the amount of the fee be utilized to pay for improvements benefiting the particular property on which the fee is imposed. On the contrary, all fees collected by the city are to be used for the purpose of maintaining the network of city streets without regard to whether the city's expenditures "specifically relate to any particular property from which the fees for said purposes were collected." Fort Collins City Code § 108A–4 (1984). Since the ordinance does not require that the revenues generated by the fee be applied to enhance the value of the properties assessed "in an amount at least equal to the burden imposed," *Reams,* 676 P.2d at 1194, it is obvious that the transportation utility fee ordinance does not constitute a special assessment.

### C.

We finally consider whether the transportation utility fee constitutes a special fee—that is, a charge imposed on persons or property and reasonably designed to meet the overall cost of the service for which the fee is imposed. *See generally Loup–Miller Const. Co.,* 676 P.2d at 1174–75; *Western Heights Land Corp.,* 146 Colo. at 468–69, 362 P.2d at 158. The transportation utility fee imposed upon owners or occupants of developed property fronting city streets and the revenues generated thereby are used for the purpose of defraying the expenses connected with the operation and maintenance of city streets. The owners and occupants of developed lots subject to the fee receive the benefit of a program of city maintenance calculated to provide effective access to and from residences, buildings, and other areas within the city. To be sure, the city council could have chosen some other method of raising funds for street maintenance, but the mere existence of alternatives is not a sufficient reason to invalidate the particular method chosen. *See Western Heights Land Corp.,* 146 Colo. at 466–67, 362 P.2d at 157. The city council also could have elected to impose the fee on a larger segment of the public—for example, all licensed drivers residing within the city or all adult residents of the city. We, however, do not view the class of persons liable for the fee—*i.e.,* the owners or occupants of developed lots fronting city streets—so limited in relation to the nature of the service as to render the ordinance invalid.

We recognize that the transportation utility fee is not conditioned on the voluntary choice of owners or occupants of developed lots. We have never held, however, that a service fee must be voluntary. In upholding an ordinance imposing a sewer service charge upon apartment building owners in *Loup–Miller,* 676 P.2d 1170, and again in approving an ordinance imposing a storm drainage fee on property owners in *Zelinger,* 724 P.2d 1356, we did not turn our decisions on whether the fee was voluntary or on the availability of the services from a nongovernmental source. Rather, we based our decisions on the fact that the fees were reasonably designed to offset the overall cost of services for which the fees

were imposed.[8]

We are thus satisfied that where, as here, a municipality imposes a special fee upon owners or occupants of developed lots fronting city streets for the purpose of providing revenues for the maintenance of city streets, and where the fee is reasonably designed to defray the cost of the service provided by the municipality, such fee is a valid form of governmental charge within the legislative authority of the municipality.

## V.

■ The ordinance creating the fee, however, is not devoid of all defect. Section 108A–13 authorizes the city council to transfer any excess revenues not required to satisfy the purpose of the ordinance to any other fund of the city. The transfer of a substantial amount of money generated by the transportation utility fee to some other city fund would be tantamount to requiring the class of persons responsible for the fee—the owners or occupants of developed lots fronting city streets—to bear a disproportionate share of the burden of providing revenues to defray *general governmental expenses* unrelated to the purpose for which the fee is imposed. The effect of such a transfer would be to render the transportation utility fee the functional equivalent of a tax. *See Zelinger,* 724 P.2d at 1358.

Although the record shows that to date the revenues generated by the ordinance have been less than the expenses incurred by the city in maintaining its streets, the fact remains that the transfer provision could well be utilized in the future to effec-

tuate the transfer of a substantial amount of transportation utility revenues to some other city fund. Such a transfer cannot be squared with the principle that a service fee must be reasonably designed to defray the expenses for the particular service for which the fee is imposed. *See Zelinger,* 724 P.2d at 1359; *Loup–Miller,* 676 P.2d at 1175–76; *Western Federal Heights Corp.,* 146 Colo. at 468–69, 362 P.2d at 158; O. Reynolds, Jr., *Local Government Law* § 105. The transfer provision of section 108A–13, in our view, constitutes an invalid attempt to authorize the city council to employ transportation utility revenues for the purpose of defraying *general governmental expenses* unrelated to the maintenance of city streets.

■ When a part of an ordinance is determined to be invalid, the remainder of the ordinance nonetheless may be given effect unless the remainder is so inextricably related to the void provision as to be incapable of being effectuated in accordance with the overriding legislative purpose. *See Reams,* 676 P.2d at 1196; § 2–4–204, 1B C.R.S. (1973). In this case we are satisfied that the transfer provision in section 108A–13 can be effectively severed from the remainder of the ordinance, and, when so severed, the remaining parts of the ordinance can be implemented in accordance with the stated legislative purpose of "providing maintenance and upkeep of the city's local streets and related facilities." Fort Collins City Code § 108A–1 (1984).

The judgment of the district court is accordingly reversed, and the case is remanded to that court for further proceed-

---

**8.** One line of cases has distinguished a fee from a tax on the basis of the voluntary nature of the fee. *See generally National Cable Television Ass'n, Inc. v. United States,* 415 U.S. 336, 341, 94 S.Ct. 1146, 1149, 39 L.Ed.2d 370 (1974); *Federal Power Commission v. New England Power Co.,* 415 U.S. 345, 94 S.Ct. 1151, 39 L.Ed.2d 383 (1974); *City of Vanceburg v. Federal Energy Regulatory Comm'n,* 571 F.2d 630, 644 n. 48 (D.C. Cir.1977), *cert. denied,* 439 U.S. 818, 99 S.Ct. 79, 58 L.Ed.2d 108 (1978). This line of case law arose in the context of a regulatory agency's statutory authority to impose a charge for the agency's services. In resolving whether the charge was a fee or a tax, the courts focused on

the fact that a tax can only be imposed by legislative body, and not by an administrative agency. We certainly do not read these cases as precluding a legislative body, such as a city council of a home-rule city, from enacting a special fee to fund a particular governmental service, even though the fee may not be the voluntary choice of those upon whom it is imposed. Since there can be no question here that the Fort Collins City Council, acting in its legislative capacity, had the authority to enact a special fee, we decline to engraft a "voluntariness" factor onto the tax-fee distinction in resolving this case.

ings, consistent with the views herein expressed, on any remaining claims not resolved by this opinion.

LOHR, J., dissents, and KIRSHBAUM, J., joins in the dissent.

Justice LOHR dissenting:

The majority holds that the transportation utility fee created by an ordinance of the home rule city of Fort Collins is a valid special fee imposed upon owners or occupants of developed lots fronting city streets.[1] I respectfully dissent because I believe that the transportation utility fee is an involuntary tax that cannot be characterized as a valid special fee or special assessment.

As the majority explains, a municipality has four principal ways of raising needed funds: *ad valorem* property taxes, excise taxes, special assessments, and special fees. Fort Collins' transportation utility fee is not a valid *ad valorem* tax because it "is not based on the value of the developed lot subject to the fee." Maj. op. at 309. It is not an excise tax because its payment is not a precondition of owning or occupying a developed lot fronting a city street or of exercising any other right or privilege. Maj. op. at 310.

The question is whether the transportation utility fee can be characterized as a valid special assessment or as a special fee. A special assessment is a device used to finance local public improvements. *Reams v. City of Grand Junction*, 676 P.2d 1189, 1193 (Colo.1984). "Property owners are specially assessed because the benefits they receive from the particular improvements are different from the benefits they enjoy in common with other property owners of the political subdivision." *Id.* at 1194. To be valid, a special assessment "must specially benefit or enhance the value of the premises assessed in an amount at least equal to the burden imposed." *Id.; accord City and County of Denver v. Tihen*, 77 Colo. 212, 215, 235 P. 777, 779 (1925). In other words, the assessed property that actually benefits from the improvement must be charged. *Pomroy v. Board of Public Water Works of Pueblo*, 55 Colo. 476, 479, 136 P. 78, 80 (1913); B. Matthews, 1B *Municipal Ordinances* §§ 36.01–36.25 (2d ed. 1986) (hereinafter *Municipal Ordinances*). The amount assessed must be based on the increased value of the property, not on the cost of the improvement. *Pomroy*, 55 Colo. at 479, 136 P. at 80; E. McQuillin, 14 *The Law of Municipal Corporations* § 38.113 (3d ed. 1987). Projects often financed by special assessments include street pavements, sidewalks, water mains, sewer mains and street lighting. *Municipal Ordinances* §§ 36.01–36.25; *see, e.g., Reams*, 676 P.2d 1189 (elevated arterial roadway, sidewalks, curbs and gutters); *Satter v. City of Littleton*, 185 Colo. 90, 522 P.2d 95 (1974) (paving and repaving of specific streets). I agree with the majority that the transportation utility fee is not a valid special assessment because the revenues raised need not be used to increase the value of the particular properties assessed in an amount equal to or greater than the amount assessed. *See* maj. op. at 310.

A special fee, or utility fee, is a charge imposed upon persons or property in exchange for a particular government service that benefits the party paying the fee in a manner not shared by other members of society. *Emerson College v. City of Boston*, 391 Mass. 415, 462 N.E.2d 1098, 1105 (1984); O. Reynolds, *Local Government Law* § 105(1982); *see Loup–Miller Constr. Co. v. City and County of Denver*, 676 P.2d 1170, 1175 (Colo.1984) (holding that sewage service charges and sanitary sewer connection fees constituted special fees, not taxes); *City of Arvada v. City and County of Denver*, 663 P.2d 611, 614–15 (1983) (holding that development fee may be imposed on property owners connecting to city water system to create fund to maintain and improve that system); *Western Heights Land Corp. v. City of Fort Collins*, 146 Colo. 464, 362 P.2d 155 (1961)

---

1. The majority holds, and I agree, that the "transfer" provision, allowing the city council to transfer excess revenues to any other city fund, makes the ordinance an impermissible tax, but that this provision is severable from the remainder of the ordinance.

(holding that charges for water and sewer connections and service are valid fees). The essence of a special fee is that it is charged in exchange for a specific government service that is requested by an individual and directly benefits that individual.

The first characteristic of a special fee is that it is charged in exchange for a specific government service. *See, e.g., Loup–Miller*, 676 P.2d 1170 (sewage service and sanitary sewer connection fees); *Western Heights*, 146 Colo. 464, 362 P.2d 155 (water and sewer connections and service). A charge becomes a tax when it is used to finance or maintain traditional government functions. *E.g., Ochs v. Town of Hot Sulphur Springs*, 158 Colo. 456, 461, 407 P.2d 677, 680 (1965); *City of North Little Rock v. Graham*, 278 Ark. 547, 647 S.W.2d 452 (1983) (holding that three dollar per household, business and apartment residence "public safety fee" used to pay salaries for police and fire protection workers was a tax).

The second characteristic of a special fee is that it is voluntary. The service must, in some sense, be requested by the individual who is assessed the charge. *E.g., National Cable Television Assn., Inc. v. United States*, 415 U.S. 336, 340–41, 94 S.Ct. 1146, 1148–49, 39 L.Ed.2d 370 (1974); *City of Vanceburg v. Federal Energy Regulatory Commission*, 571 F.2d 630, 644 n. 48 (D.C. Cir.1977), *cert. denied*, 439 U.S. 818, 99 S.Ct. 79, 58 L.Ed.2d 108 (1978); *Stewart v. Verde River Irrigation & Power Dist.*, 49 Ariz. 531, 68 P.2d 329, 334–35 (1937); *Emerson College*, 462 N.E.2d at 1105. The majority asserts, without explanation, that this line of cases is distinguishable because it arises in the context of a regulatory agency's authority to charge for its services. Maj. op. at 311 n. 8. In fact, some cases in this line not cited by the majority in its discussion of voluntariness involve charges established by state statutes or local ordinances. *See, e.g., Emerson College*, 462 N.E.2d 1098; *Stewart*, 68 P.2d 329. Furthermore, the majority's analysis acknowledges that mandatory taxes must meet certain constitutional or charter requirements, such as legislative approval, and that voluntary fees charged in exchange for services rendered need not. The voluntariness distinction between taxes and fees remains relevant when determining whether a charge must meet additional requirements of a tax that do not apply to fees, such as the uniformity requirement.

The third characteristic of a special fee is that it is paid in exchange for a service that directly benefits the person paying the fee. The person paying the fee has "asked a public officer to perform certain services for him, which presumably bestow upon him a benefit not shared by other members of society." *Stewart*, 68 P.2d at 335; *accord Emerson College*, 462 N.E.2d at 1105–06. For example, an individual pays a fee for sanitary sewer connection service and that person's property is hooked up to the sewer system. *See Loup–Miller*, 676 P.2d 1170. The principle behind special fees is similar to that underlying special assessments: "[t]hose who benefit should bear the cost of providing the benefit." A. Reynolds, *supra*, § 105.

Road maintenance expenditures are traditional governmental expenditures that benefit the public at large. *See Ochs*, 158 Colo. 456, 407 P.2d 677. The revenues from the fee at issue here are not restricted to providing maintenance of any particular streets. There is no necessary direct benefit derived by a property owner upon whom the fee is imposed that is not shared by other members of society. In short, the transportation utility fee has none of the essential characteristics of a special fee. In *Ochs v. Hot Sulphur Springs*, 158 Colo. 456, 407 P.2d 677 (1965), this court invalidated a similar "frontage tax." The tax was assessed on property based on the amount of street frontage and the revenue was allocated sixty percent to the street department fund and forty percent to the equipment fund. This court concluded that the tax was for a general purpose and was therefore invalid because it was not structured as an *ad valorem* tax.

In *Zelinger v. City and County of Denver*, 724 P.2d 1356 (Colo.1986), this court upheld a storm drainage fee that did not meet the traditional requirements of either a special assessment or a special fee. The

storm drainage fee was assessed against all property owners based on the size of the property and the ratio of impervious to pervious surface area. Revenue generated by the fee was used to operate, maintain, improve and replace storm drainage facilities. This fee does not fall within the traditional special fee model. It was not a charge paid in exchange for a requested service. The court combined analysis from special assessment and special fee cases and determined that the property owners were sufficiently linked to the need for and the benefit of storm drainage facilities to permit the fee. I would extend the analysis of *Zelinger* no further.

The majority's approach seems to allow any government service to be financed by a fee that bears some relationship to the benefit produced by the service. This approach undermines the constitutional requirements of *ad valorem* taxation. Accordingly, I respectfully dissent.

KIRSHBAUM, J., joins in this dissent.