The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
March 26, 2026

## 2026COA20

**No. 25CA0030, *Dorotik v. Breckenridge* — Taxation — TABOR;
Municipal Law — Regulatory Police Power — Regulatory Fees**

As a matter of first impression, a division of the court of

appeals considers whether a "revenue positive" regulatory charge is

a tax subject to a vote under the Taxpayer's Bill of Rights (TABOR).

The division holds that a government can impose a regulatory fee —

and provide fee-funded services in exchange for that fee — even if

the activities subject to the fee also generate revenue under the

government's general taxation scheme.  The division then concludes

that the challenged charge is a regulatory fee that did not require a

vote under TABOR.  Accordingly, the division affirms the trial

court's dismissal of the complaint for failure to state a claim for

relief.

Court of Appeals No. 25CA0030
Summit County District Court No. 24CV30182
Honorable Karen A. Romeo, Judge

Alexander Dorotik,

Plaintiff-Appellant,

v.

Town of Breckenridge, a Colorado municipal corporation,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE KUHN
Dunn and Lipinsky, JJ., concur

Announced March 26, 2026

Ingenuity Law Colorado, Alexander Dorotik, Denver, Colorado, for Plaintiff-Appellant

Berg Hill Greenleaf Ruscitti LLP, Josh A. Marks, Geoffrey C. Klingsporn, Boulder, Colorado, for Defendant-Appellee

¶ 1     This case requires us to consider whether defendant, the Town of Breckenridge, violated the Taxpayer's Bill of Rights (TABOR) by enacting a charge on short-term rental (STR) owners. Plaintiff, Alexander Dorotik, claims that the charge is a tax that violates TABOR because the activity subject to the charge allegedly generates more revenue than the amount of the claimed expense.

¶ 2     We hold that a government can impose a regulatory fee even if the activities subject to the fee also generate revenue under the government's general taxation scheme. Applying *Colorado Union of Taxpayers Foundation v. City of Aspen*, 2018 CO 36, we conclude that Breckenridge enacted a regulatory fee, not a tax requiring a vote under TABOR. Accordingly, we affirm the trial court's order dismissing the case.

## I. Background

¶ 3     In 2021, Breckenridge passed Ordinance No. 35, which enacted an annual charge it referred to as a regulatory fee. The charge applies to owners obtaining or renewing a license for an STR in Breckenridge. The primary purpose of the charge, as specified in the ordinance, is to "defray[] the costs of housing policies and

1

programs for the local workforce essential to the [t]ourism economy that benefits the short-term rental licensees."

¶ 4 Before passing the ordinance, Breckenridge retained a third-party consultant to calculate a reasonable fee or charge to impose on STR owners to bridge "the gap between what . . . [the town's] employee-households can afford and the cost to purchase a home" in Breckenridge. The consultant conducted a study and issued a report finding "a reasonable relationship between guest spending from STRs in the town and the demand for housing affordable" for the local workforce. The consultant's report indicated that a "regulatory fee is needed to support the local labor force and [t]own housing programs that sustain the tourism economy in Breckenridge."

¶ 5 The consultant concluded that "the maximum fee per bedroom is $2,161." However, Breckenridge capped the enacted fee at thirty-five percent of the study's finding, which resulted in "a final fee of $756 per bedroom."

¶ 6 Dorotik, who owns a townhome in Breckenridge subject to the STR regulatory fee, filed a complaint challenging the fee. He alleged that the charge was a tax, not a fee, and was therefore enacted in

violation of TABOR, which requires "voter approval . . . [for] any new tax, tax rate increase, . . . or a tax policy change directly causing a net tax revenue gain to any district." Colo. Const. art. X, § 20(4)(a). Dorotik alleged that STR guest spending generated more revenue for the town, in the form of sales and lodging tax revenue, than the expense of the programs addressed by the fee. So, he alleged, the charge was not a fee because it didn't merely offset the town's cost for the programs but generated excess revenue for the town.

¶ 7 Breckenridge moved to dismiss the complaint, arguing that the regulatory fee enacted by the ordinance was indeed a fee, even though "STR renters also create tax revenues." The trial court granted Breckenridge's motion to dismiss, holding that "Ordinance No. 35 does not facially purport to levy a tax because it is to protect the public's health, safety, and welfare and it labels the charge as a fee." The trial court also ruled that because the primary purpose of the charge is to defray the costs of "administering [Breckenridge's] regulatory scheme," and not to raise revenue for general government expenses, the charge is a fee and not a tax.

¶ 8 Dorotik now appeals.

## II.    Analysis

¶ 9      Dorotik contends that the trial court erred by concluding that Ordinance No. 35 imposes a fee rather than a tax.  As he did in the trial court, Dorotik argues that the activity Breckenridge "cites as an expense to defray (in order to justify the fee) directly generates revenue for [Breckenridge] in an amount far greater than the cited expense."  And because the amount generated is allegedly "far greater" than the expense, he argues that the charge is a tax and not a fee.  We are not convinced.

### A.    Applicable Law and Standard of Review

¶ 10     Voters amended the Colorado Constitution in 1992 to include TABOR.  *Aspen,* ¶ 16.  "In so doing, voters specifically limited the legislative taxing power of the state and local governments by requiring that any new tax must receive voter approval prior to implementation."  *Id.* at ¶ 2.  If a tax is illegally adopted without a vote, "a portion of the revenue collected . . . must be refunded to taxpayers along with ten percent interest."  *Id.* at ¶ 17.  "TABOR applies to 'districts,' which are defined as 'the state or any local government.'"  *Id.* (quoting Colo. Const. art. X, § 20(2)(b)).

4

¶ 11    "To survive . . . dismissal for failure to state a claim under [C.R.C.P.] 12(b)(5), a [plaintiff] must plead sufficient facts that . . . suggest plausible grounds to support a claim for relief." *Froid v. Zacheis*, 2021 COA 74, ¶ 29 (quoting *Patterson v. James*, 2018 COA 173, ¶ 23). A court will grant a Rule 12(b)(5) motion to dismiss if "the plaintiff's factual allegations do not, as a matter of law, support the claim for relief." *Norton v. Rocky Mountain Planned Parenthood, Inc.*, 2018 CO 3, ¶ 7. We review a Rule 12(b)(5) motion to dismiss de novo, "accept[ing] all factual allegations in the complaint as true, [and] viewing them in the light most favorable to the plaintiff." *Id.*

¶ 12    We also review "a trial court's legal conclusions concerning the interplay of TABOR and related statutes de novo." *TABOR Found. v. Colo. Bridge Enter.*, 2014 COA 106, ¶ 18. "Generally, municipal ordinances are presumed to be constitutional, and the party challenging an ordinance bears the burden to prove its unconstitutionality beyond a reasonable doubt." *Town of Dillon v. Yacht Club Condos. Home Owners Ass'n*, 2014 CO 37, ¶ 22.

B.    Ordinance No. 35 Implements a Regulatory Fee

1.    General Principles

¶ 13    This case requires us to determine whether Ordinance No. 35 imposes a tax or a fee.  When reviewing a charge involving a regulatory program, such as the one at issue here, "we must determine if the government is exercising its legislative taxation power or its regulatory police power." *Aspen,* ¶ 26.  The supreme court has "defined taxes as charges that 'raise revenues for general municipal purposes.'" *Id.* at ¶ 20 (quoting *Bloom v. City of Fort Collins,* 784 P.2d 304, 308 (Colo. 1989)).  Distinct from its taxation power, a municipality can also regulate activities under its inherent police power "to promote the health, safety, and welfare of its citizens." *Id.* at ¶ 21.  Unlike taxes, the supreme court has held that "regulatory charges are not subject to TABOR's election requirements." *Id.* at ¶ 26.

¶ 14    To determine whether a municipality has enacted a tax under its legislative taxation power or a fee under its regulatory police power, we must identify the "government's primary purpose for enacting the charge." *Id.*  If the charge's primary purpose is to raise revenue for general government expenses, then it is a tax. *Id.*

6

However, if the "charge is imposed as part of a comprehensive regulatory scheme, and [its] . . . primary purpose . . . is to defray the reasonable direct and indirect costs of providing a service or regulating an activity under that scheme, then the charge is not raising revenue for the general expenses of government." *Id.*; *see also Chronos Builders, LLC v. Dep't of Lab. & Emp.*, 2022 CO 29, ¶ 23 (concluding that premiums collected under the Paid Family and Medical Leave Insurance Act are fees). In that case, the charge is not a tax. *Aspen*, ¶ 26.

### 2. Label and Stated Purpose

¶ 15 Ordinance No. 35 includes the following statement of legislative intent and findings:

> 1. It is the purpose of [the ordinance] to protect the public health, safety, and welfare by establishing a comprehensive accommodation unit regulatory scheme that will strike an equitable balance between the short[-]term rental industry and the local community.
>
> 2. The regulatory fee will benefit accommodation unit licensees by supporting housing policies and programs for the local workforce that supports industries that create the World Class resort experience.
>
> 3. The regulatory fee will help address the secondary impacts caused by the short[-]term

rental industry by protecting the character of the local community and [Breckenridge] neighborhoods where accommodation units are located.

4. To ensure that the amount of the fee bears a reasonable relationship to the direct and indirect costs of implementing [Breckenridge's] comprehensive regulatory program established by this Chapter, the administration retained an expert consulting firm to conduct a fee study and establish the reasonable amount of the fee.

5. The fee established by this section is not designed to raise revenues to defray the general expenses of [Breckenridge] government, but rather is a charge imposed for the purpose of defraying some of the costs of the particular [Breckenridge] services and programs described in subsection D of this section.

6. Consistent with *Colorado Union of Taxpayers Foundation v. City of Aspen*, 418 P.3d 506 ([Colo.] 2018), that a charge is not a tax if the primary purpose of the charge is not to raise revenue for general governmental purposes but is instead to defray some of the costs of regulating an activity under a comprehensive regulatory scheme, the fee imposed by [Breckenridge] under this section is collected from the short-term rental licensees for the primary purpose of defraying the costs of housing policies and programs for the local workforce essential to the Tourism economy that benefits the short[-]term rental licensees.

¶ 16    The stated purpose of Ordinance No. 35 shows that Breckenridge intended to implement a regulatory fee rather than a tax.  The ordinance indicates that its purpose is to "protect the public health, safety, and welfare" through a "regulatory scheme that will strike an equitable balance between the short[-]term rental industry and the local community."  It also indicates that the regulatory fee is designed to address the "secondary impacts" of STRs on the local community.  And the ordinance states that the regulatory fee is not designed to raise revenue for general government expenses "but rather is a charge imposed for the purpose of defraying some of the costs of the particular [t]own services and programs."

¶ 17    Finally, the charge is labeled as a "regulatory fee," not a tax.  While labeling a charge as a fee does not necessarily make it so, a court cannot "ignore the stated legislative intent" behind the charge.  *Colo. Bridge Enter.,* ¶ 30.  We therefore conclude that Ordinance No. 35 does not facially purport to impose a tax.

### 3. Practical Realities of the Charge's Operation

¶ 18    We do not end our inquiry there.  Next, we must analyze the "practical realities of the charge's operation" to determine whether

9

the charge constitutes a tax despite its label. *Aspen*, ¶ 27. We do this by

> examin[ing] the practical realities of how the charge operates to determine if [it] is in fact imposed to defray the direct or indirect costs of regulation and if the amount of the fee is reasonable in light of those costs, or if the charge's primary purpose is to raise revenue for general governmental use.

*Id.* at ¶ 30.

¶ 19 Ordinance No. 35 requires STR licensees in Breckenridge to pay an annual fee, which is "fixed by the Town Council as part of its annual budget process in an amount not to exceed $756.00." The fees are then collected and, importantly, "separately account[ed] for" by the Finance Director. The ordinance restricts the collected funds such that they "shall not be used for general municipal or governmental purposes or spending." And the ordinance prohibits the collected funds from "ever be[ing] transferred to or becom[ing] part of" Breckenridge's general fund.

¶ 20 A previous division of this court has concluded that similar factors support the conclusion that a charge is a fee because the funds it raises cannot be used for general government spending. In *Colorado Bridge Enterprise*, ¶ 7, the division noted that "[n]one of

10

the [Colorado Bridge Enterprise's] revenue [was] available for general expenses of the state . . . [or] credited to the state's general fund." Likewise, the funds were deposited in a separate account, could not be used for other purposes, and could not be transferred to the state's general fund. The division concluded that all these facts indicated the charge was a fee rather than a tax. *Id.* at ¶ 34.

¶ 21    In addition to restricting how the funds are treated, Ordinance No. 35 also limits the purposes for which the charge's funds can be spent. The funds from the charge can only be used to "defray the reasonable direct and indirect costs" of three distinct program areas.

¶ 22    First, the ordinance provides that the funds generated from the charge can be used for Breckenridge's "housing policies and programs, including buy downs, lease to locals, acquisition of deed restricted units, and/or construction of new units." This use of funds is designed to address or defray the impact that STRs have on the local community in which they are located. According to the consultant's study, the industries in which STR guests spend money, such as retail, food, and beverage, do not pay their employees enough to cover the cost of market rate housing in the

town. "Without an adequate supply of housing support programs, [Breckenridge] risks losing some of its labor supply that is essential to the businesses in which STR guests spend money during their stay. Tourism is [Breckenridge's] economic base." The consultant warned that, without an adequate labor force and adequate worker housing, "the guest experience and the [t]own's economy are likely to degrade."

¶ 23    Second, the funds generated from the charge can also be used to "address the secondary impacts caused by the [STR] industry by protecting the character of the local community . . . including . . . lack of parking, loud noise, and increased trash associated with the higher density use."

¶ 24    Third, the funds can be used to defray costs for the personnel necessary to administer and enforce the regulatory program itself. Thus, the funds can only be spent in furtherance of these three areas.

¶ 25    Dorotik doesn't assert that any of these uses do anything other than defray the direct and indirect costs of the STR regulatory program in Breckenridge. Nor do we see how he could. Each of the permissible uses for the funds raised by the ordinance is tied to the

purpose of the regulatory program or the expenses of the program itself. The practical realities of the program thus also support the conclusion that the challenged charge is a fee rather than a tax.

### 4. A "Revenue Positive" Charge Does Not Convert a Charge into a Tax

¶ 26 Notwithstanding this analysis, Dorotik contends that the charge here must be a tax because the activity on which it is levied generates revenue on "the activity that caused [Breckenridge] the expense used to justify" the charge. Dorotik argues that "the study ignores the ample sales tax and lodging tax revenue generated by the occupation of STRs."

¶ 27 Recall that the study underlying the ordinance concluded that Breckenridge would have to charge a $2,161 fee per STR bedroom to defray the STR impact on the local housing market. The study used a "jobs-housing economic impact model" to quantify the relationship between "jobs and households supported by guest spending in STRs." It concluded that guests staying in STRs "spend money in the local economy, mainly in the retail, food and beverage, and recreation industries." Because these industries employ workers who do not make enough money to live in Breckenridge,

13

the study based the proposed fee on "the gap between what the employee-households can afford and the cost to purchase a home" in Breckenridge.

¶ 28     Using the study, and based on his own calculations, Dorotik's complaint alleged that these same STR guests also generated additional tax revenue to Breckenridge from their spending in hospitality and recreation businesses.  Dorotik alleged that each STR generated $7,503.60 per year in sales and lodging taxes.  He argues on appeal that this amount is "approximately 87% greater than the expense of the activity to [Breckenridge]."[1]  Therefore, Dorotik claims, there is no "'expense' to offset with a fee."  In other words, Dorotik claims that as long as an activity generates tax revenue in excess of program costs, that activity cannot be subject to a regulatory fee.  We are not convinced.

¶ 29     As the trial court noted, Dorotik "cites no authority for [his] position that the government must include revenue generated from

---

[1] It is unclear how precise these comparisons are, given that the study bases its fee on bedrooms but Dorotik bases his tax revenue figures on dwellings.  Regardless, we accept these allegations as true for the purposes of our analysis under C.R.C.P. 12(b)(5).  *See Norton v. Rocky Mountain Planned Parenthood, Inc.*, 2018 CO 3, ¶ 7.

14

taxes into its cost analysis." And while it's true that when the government enacts a fee, the fee amount must be "reasonably designed to meet the overall cost of the service [or activity] for which the fee is imposed," *Bloom,* 784 P.2d at 310, that doesn't mean that the fee calculation must take other tax revenue into consideration. To the contrary, a fee need only be "reasonably related" to the cost of the service and "mathematical exactitude" is unnecessary. *Colo. Bridge Enter.,* ¶ 26. Like the trial court, we do not see anything unsound about the methodology the consultant used to support the amount of the fee.

¶ 30    In support of his position, Dorotik argues that Ordinance No. 35 is an outlier because in all other TABOR fee cases the activity that was regulated did not also generate tax revenue. But that's not right. For example, in *Aspen,* the city adopted an ordinance prohibiting stores within its city limits from providing customers with plastic bags. *Aspen,* ¶ 4. Stores could, however, provide paper bags to customers while charging them a "$0.20 'waste reduction fee.'" *Id.* The fee was designed to defray the cost of "recycling, collection, and disposal of plastic and paper bags." *Id.* at ¶ 5.

¶ 31    Dorotik argues that the waste reduction fee was calculated to directly offset the cost of recycling one bag.  And he claims that the underlying activity didn't generate any revenue.  It's true that tax revenue wasn't a focus in the *Aspen* case, but the premise of Dorotik's argument still fails.  The city's need to subsidize recycling was driven by the distribution of single-use bags by stores.  But the distribution of those bags was an impact of shopping in the first place.  In other words, shopping was the underlying activity in that case.

¶ 32    Accordingly, for any shopping transaction in Aspen, consumers were paying both sales tax *and* the waste reduction fee. *See id.* at ¶ 6 ("Grocers remit the remainder of the charge to Aspen on a form separate from their sales tax form.").  Increased shopping leads to an increase in bag usage, but it also leads to an increase in sales tax.  So contrary to Dorotik's argument, we cannot say that this is the only TABOR fee case in which the underlying activity also generates tax revenue in another way.

¶ 33    It is unsurprising, then, that the supreme court has also observed that a government can use its legislative taxation power and its regulatory police power "in tandem with one another."  *Id.* at

¶ 22.  The *Aspen* court noted that the General Assembly had previously imposed regulations on the sale and use of marijuana through its regulatory powers, and that it had also separately levied a tax on marijuana.  *Id.*  The court concluded that "the government may permissibly regulate and tax the same product."  *Id.*

¶ 34    The touchstone of the fee amount analysis is whether "the charge b[ears] a reasonable relationship to the direct or indirect costs to the government of providing the service or regulating the activity."  *Id.* at ¶ 23.  But "the particular mode adopted by a city in assessing the fee is a matter of legislative discretion," and the "methodology chosen [will not be set aside] unless it is inherently unsound."  *Bruce v. City of Colorado Springs*, 131 P.3d 1187, 1190 (Colo. App. 2005).

¶ 35    As supported by the study, the charge challenged here "demonstrates a reasonable relationship between guest spending from STRs in the town and the demand for [affordable housing]."  We see nothing inherently unsound in Breckenridge regulating STRs — and providing additional fee-funded services in exchange for the charge — on activities that are also subject to the town's general taxation scheme.  Accordingly, we hold that Ordinance No.

17

35 did not violate TABOR by imposing the STR charge on a "revenue positive" activity.

¶ 36    Therefore, like the trial court, we conclude that Ordinance No. 35 levies a fee and was not subject to a vote under TABOR. Given this conclusion, we also agree with the trial court that Dorotik failed to state a claim for relief. The trial court did not err by dismissing his complaint under Rule 12(b)(5).

### III.    Disposition

¶ 37    The judgment is affirmed.

JUDGE DUNN and JUDGE LIPINSKY concur.