## No. 26648

**Charles L. Lyman, Frances W. Lyman, Patricia E. Keller, Jack Kvarfordt, John T. Maley, and Adalaine M. Maley, for themselves and all others similarly situated v. The Town of Bow Mar, a Colorado municipal corporation; The Mountain States Telephone and Telegraph Company, a corporation, doing business under the assumed name of "Mountain Bell," and Public Service Company of Colorado, a corporation — and Frederick R. Calhoun, Charles L. Lyman, Frances W. Lyman, Patricia E. Keller, Jack Karford (a/k/a Jack Kvarfordt), John T. Maley and Adalaine M. Maley v. The Town of Bow Mar, a Colorado municipal corporation**

(533 P.2d 1129)

Decided April 14, 1975.

218

Maley and Schiff, P.C., John J. Maley, for plaintiffs-appellants.

Davis, Graham & Stubbs, David M. Ebel, for defendant-appellee The Town of Bow Mar.

Rovira, DeMuth & Eiberger, Luis D. Rovira, J. Walter Hyer, III, Jarvis W. Seccombe, for defendant-appellee The Mountain States Telephone and Telegraph Company.

Lee, Bryans, Kelly & Stansfield, Donald W. Cawelti, for defendant-appellee Public Service Company of Colorado.

220

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

This now consolidated action was brought by the plaintiff residents of the Town of Bow Mar to challenge the actions of the Board of Trustees of Bow Mar in creating an improvement district for the burying of the overhead utilities of the co-defendants Mountain States Telephone and Telegraph Company (hereinafter referred to as Mountain Bell) and Public Service Company of Colorado (hereinafter referred to as the Public Service Company). The ordinance creating the district set up a schedule of assessments against the property in the district to pay for the conversion costs and provides for issuance of bonds thereon. The actions of the Board of Trustees of Bow Mar were taken pursuant to the provisions of the Colorado Underground Conversion of Utilities Act, article 23 of chapter 89, 1971 Perm. Supp., C.R.S. 1963[1] [hereinafter referred to as the Act]. The trial court found for the defendants on all issues, and the plaintiffs brought this appeal. We affirm and will set out the plaintiffs' arguments as we discuss each issue.

I.

█ The plaintiffs' first allegation of error is that the trial court should have granted plaintiffs' motion to allow this suit to proceed as a class action. However, during oral argument counsel for the plaintiffs admitted that the determination of whether or not this suit could proceed as a class action is important only for the purpose of determining legal fees. In *Mills v. Electric Auto-Lite Company*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), the Supreme Court stated that a court should "award [attorneys'] expenses where a plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself." 396 U.S. at 392. Since we resolve the issues in this case against the plaintiffs, it becomes self-evident that the plaintiffs have achieved no benefit for themselves and would not have benefitted others if this suit had been allowed to

---

[1]Article 8 of title 29, C.R.S. 1973.

proceed as a class action. Therefore, since as a result of our decision here, no attorneys' fees could be awarded to the plaintiffs if this suit were a class action, and since admittedly, the plaintiffs' only reason for pursuing the class action was to insure the payment of attorneys' fees, the issue is moot.

## II.

The plaintiffs' second argument for reversal of the trial court is that the Town of Bow Mar had no authority to pass an ordinance providing for the conversion to underground service of the lines of Mountain Bell and the Public Service Company. Article 23 of chapter 89, 1971 Perm. Supp., C.R.S. 1963 makes a legislative declaration that a public purpose will be served by conversion of existing overhead electric and communication facilities to underground locations. It then provides a method of setting up improvement districts as a means of accomplishing this purpose. The plaintiffs claim that privately owned utilities such as Mountain Bell and the Public Service Company do not come within the definition of public utilities covered by the Act.

The Act defines a "public utility" in 1971 Perm. Supp., C.R.S. 1963, § 89-23-3;[2] as:

"* * * one or more persons or corporations that provide electric or communication service to the public by means of electric or communication facilities and shall include any city, county, special district, or public corporation that provides electric or communication service to the public by means of electric or communication facilities."

The plaintiffs contend that applying the statutory construction rule of ejusdem generis to this definition, specifically restricts the definition of public utilities under this Act to "any city, county, special district, or public corporation." Since, in their view, Mountain Bell and the Public Service Company are none of these, they contend these companies are not included within the Act.

The plaintiffs' argument is without merit. First, Mountain Bell and the Public Service Company do "provide electric or communication service to the public by means of electric or communication facilities." We have held in *Martinez v. People,*

---

[2]Section 29-8-103, C.R.S. 1973.

111 Colo. 52, 137 P.2d 690 that the rule of ejusdem generis is to be applied only when the intent of the legislature is unclear. It cannot be applied to hinder the intent of the legislature. Here, the declared legislative purpose for this Act was to enable local governments "to convert existing overhead electric and communication facilities to underground locations." 1971 Perm. Supp., C.R.S. 1963, § 89-23-2.[3] To hold that the legislature meant to provide a method to convert all overhead facilities to underground locations *except* those of privately owned utility companies would defeat the very purposes the legislature attributed to the enactment of this legislation.

■ Second, as we said in *Martinez, supra,* the ejusdem generis rule is used to construe general words in a statute "as applicable only to persons or things of the same general nature or class as those enumerated" when "general words *follow* the enumeration of particular classes of persons or things." 111 Colo. at 57-58, 137 P.2d at 692-93 [emphasis added]. In the statute in question here, the general words "public utility" *precede* the specific enumeration of examples. Further, the word "include" is ordinarily used as a word of extension or enlargement, and we find that it was so used in this definition. To hold otherwise here would transmogrify the word "include" into the word "mean." *See Helvering v. Morgans, Inc.,* 293 U.S. 121, 55 S.Ct. 60, 79 L.Ed. 232 (1934); *American Surety Co. of New York v. Marotta,* 287 U.S. 513, 53 S.Ct. 260, 77 L.Ed. 466 (1933).

### III.

The plaintiffs raise several state and federal constitutional objections to the Act and the ordinances passed pursuant thereto by the Town of Bow Mar. We find none of these objections persuasive.

### A.

The plaintiffs' most emphasized argument is that the Act and the ordinances here in question violate Article XI, Sections 1 and 2 of the Colorado Constitution. These sections basically prohibit lending, pledging credit or making donations to persons, com-

---

[3]Section 29-8-102, C.R.S. 1973.

panies or corporations by the state, counties, cities or towns of Colorado.

Section 1 of Article XI provides in pertinent part:

"Neither the state, nor any county, city, town, township or school district shall lend or pledge the credit or faith thereof, directly or indirectly, in any manner to, or in aid of, any person, company or corporation, public or private, for any amount, or for any purpose whatever . . ."

■ We have held that bonds of improvement districts, such as Bow Mar has created, are the obligation of the improvement districts and not of the town or city, and the assistance, if any, is not within the prohibitions of the state constitution. *Montgomery v. City and County of Denver,* 102 Colo. 427, 80 P.2d 434; *Sanborn v. City of Boulder,* 74 Colo. 358, 221 P. 1077; *Milheim v. Moffat Tunnel Improvement District,* 72 Colo. 268, 211 P. 649, *aff'd,* 262 U.S. 710, 43 S.Ct. 694, 67 L.Ed. 1194. *See also Allardice v. Adams County,* 173 Colo. 133, 476 P.2d 982; *Ginsberg v. City and County of Denver,* 164 Colo. 572, 436 P.2d 685; *Shields v. City of Loveland,* 74 Colo. 27, 218 P. 913. The thrust of this constitutional provision is that cities and towns should not allow their tax-derived general funds to secure assistance to private corporations.

■ Under the Act in question the legislature has provided that: "The bonds . . . shall be secured by and payable from the irrevocable pledge and dedication of the funds derived from the levy and collection of the special assessments in anticipation of the collection of which they are issued." 1971 Perm. Supp., C.R.S. 1963, § 89-23-29(3).[4]

Even though the legislature has not specifically said that the general funds of a town or city may never be used to pay off obligations under this Act, the fact that "the bonds 'shall be secured by and payable from' the funds derived from the special assessment . . . can reasonably be interpreted as being mandatory in such direction." *Wagner v. Salt Lake City,* 29 Utah 2d 42, 48-49, 504 P.2d 1007, 1012. Thus, the Act does not contravene Article XI, Section 1 of the Colorado Constitution.

---

[4]Section 29-8-129(3), C.R.S. 1973.

■ The plaintiffs argue that the Act violates that portion of Article XI, Section 2 of the Colorado Constitution which provides:

"Neither the state, nor any county, city, town, township or school district shall make any donation or grant to . . . any corporation or company . . . ."

In this connection, the plaintiffs contend that all the previously cited cases except *Wagner,* which upheld Utah's Burying of Overhead Utilities Act, are distinguishable because the improvement district, city or town owned the improvement for which the bonds were issued. In the instant case, Mountain Bell and the Public Service Company will own the underground lines. For the purposes of this case, we will assume that Mountain Bell and the Public Service Company will receive a benefit under this Act in the sense that they will be paid for something they could have been forced to do without compensation.

With the issue thus framed, the landmark case of *Oswego & Syracuse R. R. Co. v. New York,* 226 N.Y. 351, 124 N.E. 8 (1919) becomes relevant. In *Oswego* the railroad owned a bridge over the Seneca River which would have to be removed and replaced because of a state program to improve the navigability of the river. Under New York law, the railroad could have been forced to pay the cost of the new bridge, but the legislature had provided for compensation. In upholding this reimbursement under a constitutional prohibition, similar to our own, which prohibited the giving or loaning of state money to or in aid of corporations, Judge Cardozo said:

"The state was about to execute a great public work. It saw that in the doing of that work there would be destruction of private property. Much of the damage would be damnum absque injuria. None the less it would be damage. The result would be inequality in the distribution of public burdens. Some would pay more dearly than others in proportion to benefits received. This inequality the Legislature, fixing in advance the conditions of the undertaking, had the power to correct. It might refuse to launch an enterprise at the price of hardship and oppression. There was power to destroy, and leave the loss where it might fall. There was also power to pay for the destruction, and thereby reestablish some uniformity of proportion between benefits and

burdens. The question was for the Legislature whether the equity of compensation was strong enough to merit recognition. We cannot hold it to be illusory.'' 226 N.Y. 351, 124 N.E. at 10.

Just as the railroad in *Oswego* was content with the bridge they were then using, Mountain Bell and the Public Service Company do not have any need to bury their overhead lines. If the legislature wishes to set up a procedure to reimburse the utilities for this expense, we do not believe this is a prohibited ''grant or donation'' under the Colorado Constitution. *See Lehigh Valley Railway Co. v. Canal Board,* 204 N.Y. 471, 97 N.E. 964; *Edge v. Brice,* 253 Iowa 710, 113 N.W.2d 755; *State v. City of Austin,* 160 Tex. 348, 331 S.W.2d 737; *Wagner v. Salt Lake City, supra.*

B.

The plaintiffs raise several broad constitutional arguments which can best be characterized as allegations that the resolutions and ordinances of Bow Mar violate their rights to equal protection and due process of law under the applicable provisions of the United States and Colorado constitutions. Only three of these allegations merit any discussion.

First, the appellants claim that the Board of Trustees of Bow Mar acted arbitrarily and unreasonably by finding that the burying of these utility lines confers a special benefit on lot owners within the district and by assessing $100 less for vacant lots than for improved lots. The plaintiffs further contend that by not including certain lots in the same town within the improvement district while including theirs, the Board of Directors acted arbitrarily and unreasonably. It is well established, however, that the determination of the boundaries of an improvement district and the extent to which a property is specially benefitted by an improvement are matters left to the discretion of municipal authorities, and their determination is conclusive on the courts unless it is fraudulent or unreasonable. *E.g., Satter v. City of Littleton,* 185 Colo. 90, 522 P.2d 95; *Orchard Court Development Co. v. City of Boulder,* 182 Colo. 361, 513 P.2d 199; *City of Denver v. Kennedy,* 33 Colo. 80, 80 P. 122; *Village of Edina v. Joseph,* 264 Minn. 84, 119 N.W.2d 809. As in *Satter* and *Orchard, supra,* the plaintiffs here have offered no expert testimony but only their own conclusions to support their protests. There is no contention that the Board of Trustees acted fraudulently, and

there is ample evidence in the record to support the trial court's conclusion that the Board did not act unreasonably.

Second, the plaintiffs allege that the assessment constitutes a lien on each lot within the district and that this is a taking of private property for a private use without just compensation. As noted in the previous paragraph, the Board of Trustees determined that the property has been specially benefitted. This special benefit is the "compensation" which the constitution requires when private property is taken. Even with this compensation, however, the assessments would not have been valid under Article II, Section 14 of the Colorado Constitution if this had been a prohibited taking of private property for a *private use*. However, we agree with the Utah Supreme Court's conclusion in *Wagner v. Salt Lake City, supra,* that this assessment serves a public purpose:

"In today's society . . . where big machinery and far-reaching equipment must be used and moved; where moving vehicles frequently strike power poles; where storms may damage power lines and endanger the public; where lightning may strike power equipment and leave large areas without power; where trees must be repeatedly trimmed away from power lines; and where children may be endangered by their proximity and availability; we do not find the legislative determination that conversion of such utilities from overhead to underground locations serves a public purpose is 'palpably and manifestly arbitrary and incorrect.' " 29 Utah 2d at 46-47, 504 P.2d at 1010-11.

Third, the plaintiffs claim that the Act denies them due process because it fails to provide for a lapse of time between the giving of notice and the public hearing on whether to create the proposed improvement district. 1971 Perm. Supp., C.R.S. 1963, §§ 89-23-10 and 89-23-11.[5]

On this issue, *Wagner v. Salt Lake City* is again instructive:

"Undoubtedly, it would have been better had the legislature fixed a reasonable time . . . for giving notice prior to the hearing. But the legislation does not, of itself, prohibit or deny reasonable notice and the inference is found in the requirements for how notice is to be given that it will be given in sufficient time to

---

[5]Sections 29-8-110, 29-8-111, C.R.S. 1973.

afford those affected an opportunity to be present." 29 Utah 2d at 50, 504 P.2d at 1013.

In the instant case, notice was published in a local paper fourteen days before the hearing. Also, the property owners in the proposed district were mailed notices of the hearing to their last known addresses, and objectors had adequate time to obtain signatures of 44 percent of the property owners in the proposed district, all of whom supported the objectors' position. We cannot find the Act unconstitutional on its face, and, under the facts here, we cannot hold that the notice provision of the ordinance, as specifically applied to the objectors, resulted in constitutionally inadequate notice.

## C.

The plaintiffs' last constitutional arguments are that the "special assessment" constitutes an appropriation in violation of Article V, Section 34 of the Colorado Constitution and that the Act is an unlawful delegation of power under Article V, Section 35 of the Colorado Constitution.

Article V, Section 34 prohibits appropriations "for charitable, industrial, educational or benevolent purposes to any person, corporation or community not under the absolute control of the state . . . " However, even if this action by Bow Mar could be considered an "appropriaton," it was decided long ago that Article V, Section 34 refers only to state funds and does not extend to municipalities. *See In re House,* 23 Colo. 87, 46 P. 117. Thus, the Act does not violate Article V, Section 34.

Nor is there an unlawful delegation of power here. Article V, Section 35 provides:

"The general assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever."

The Act clearly does not give the utilities the power to make municipal improvements, to levy taxes or to perform municipal functions. That power is reserved to the improvement district, which is a quasi-governmental body. The duties of Mountain Bell and the Public Service Company are merely the ministerial tasks of rendering financial and feasibility information to the city and

228

performing construction work after the district is properly created.

## IV.

The plaintiff's final allegation of error is that the Board of Trustees of Bow Mar should have complied with C.R.S. 1963, § 70-1-15,[6] by suspending the proceedings which resulted in the creation of the improvement district and by submitting the matter to a vote of the electors of Bow Mar. Section 70-1-15 provides in pertinent part:

"(1) No ordinance, resolution or franchise passed by the legislative body of any city or town shall take effect before thirty days after its final passage and publication, except an ordinance . . . necessary to the immediate preservation of the public peace, health or safety, and not then unless it shall state in a separate section the reasons why it is thus necessary . . . . If within said thirty days a petition signed by qualified electors equal in number to at least fifteen percent of the last preceding vote for all the candidates for governor within such municipality is filed with the city or town clerk or other election officer protesting against such ordinance or any part thereof taking effect, such ordinance or part thereof so protested against shall thereupon be suspended from taking effect . . . .

"(2) . . . the legislative body . . . shall submit the same to a vote of the qualified electors at the next general municipal election . . . or at a special election . . . and such ordinance or part thereof shall not take effect unless a majority of the qualified electors voting thereon at such election vote in favor thereof . . . ."

The resolution in question was passed by the defendant Town of Bow Mar on December 20, 1972, and declared the intent of the Town of Bow Mar to create an improvement district for the undergrounding of utilities. It set January 11, 1973, as the date of the public hearing to discuss the proposed creation of the district. The statute provides that if at least a majority of the landowners holding at least a majority of the assessable land file an objection,

---

[6]Section 1-40-115, C.R.S. 1973.
[7]Section 29-8-112(4), C.R.S. 1973.

then the proceedings must be abandoned. 1971 Perm. Supp., C.R.S. 1963, § 89-23-12(4).[7] At the hearing the plaintiffs presented petitions opposing the creation of the proposed district which were signed by only 44 percent of the property owners within the boundaries of the proposed district. The plaintiffs claim that these signatures satisfy the requirements of section 70-1-15 since there are more signatures on the petitions than the necessary 15 percent of the voters in the preceding election for governor. Therefore, the plaintiffs contend that the provisions of the referendum statute, section 70-1-15, should apply.

We disagree with the plaintiffs. They are arguing that the residents of Bow Mar should be allowed to vote on whether they desire an improvement district for the undergrounding of utilities because the plaintiffs presented a protesting petition to the notice of intent within thirty days of the passage of the resolution declaring the intent and providing for notice and public hearing. The December 20, 1972 resolution, however, did not create the improvement district but merely gave notice of an intent to create such a district and provided for a public hearing to discuss the matter. The public hearing was held and thereafter the ordinance creating the District was enacted. To this ordinance Section 70-1-15 would apply, except that the ordinance contained the emergency clause which took it out of the operation of 70-1-15.

The plaintiffs are really asking that the ordinance passed on January 22, 1974, which created the improvement district, should be suspended from taking effect and submitted to a vote of the people. However, even if the filing requirements for submitting this ordinance to the voters were satisfied, the ordinance was passed as an emergency measure necessary for the immediate preservation of the public peace, health and welfare. The inclusion of this safety clause in an ordinance is a legislative determination and is not reviewable by this Court. *E.g., Shields v. City of Loveland, supra; Van Kleeck v. Ramer,* 62 Colo. 4, 156 P. 1108. Such ordinances are not subject to the referendum power. *See Burks v. City of Lafayette,* 142 Colo. 61, 349 P.2d 692; *Shields v. City of Loveland, supra.* The plaintiffs cannot subvert the constitutional and legislative declaration that the referendum power does not lie to an emergency act by attempting to require a vote of the people on the desirability of the Act by the device of a

petition attacking the legislative body's notice that it will hold a hearing on the Act and describing its provisions.

Having found in favor of the appellees on all issues in this case, we affirm the judgment of the district court.

MR. JUSTICE GROVES does not participate.