# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 139

**OCTOBER TERM, A.D. 2015**

**October 30, 2015**

CHRISTOPHER JAMES YAGER,

Appellant
(Defendant),

v.

S-15-0045

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sheridan County*
*The Honorable Robert E. Skar, Judge*

*Representing Appellant:*

> Kevin K. Kessner and Christopher M. Sherwood, Yonkee & Toner, LLP, Sheridan, Wyoming. Argument by Mr. Kessner.

*Representing Appellee:*

> Peter K. Michael, Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Joshua C. Eames, Assistant Attorney General. Argument by Mr. Eames.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]   Appellant, Christopher Yager, challenges his conviction of third-degree sexual assault.  He contends Wyoming's sexual assault statute does not apply to sexual contact between probation officers and probationers.  We affirm.

*ISSUE*

[¶2]   Appellant presents one issue which we have restated:

> Is a probation officer an "employee . . . of a state . . . correctional system" under Wyo. Stat. Ann. § 6-2-303(a)(vii)?[1]

*FACTS*

[¶3]   Appellant was employed as a probation and parole agent by the Wyoming Department of Corrections, Division of Field Services.  In that capacity, Appellant supervised probationers and parolees.  In May 2011, Appellant began supervising M.C. as a result of her participation in a drug court treatment program.  Appellant's supervision of M.C. ceased after her completion of the treatment program in August 2012.  M.C.'s probation was scheduled to expire on April 27, 2013.  However, on April 11, M.C. tested positive for methamphetamine, and the State moved to revoke her probation.  After a hearing, the district court found she had violated the terms of her probation.  As a result, the court revoked M.C.'s probation and re-imposed her original sentence of 18 to 24 months.  The court imposed an additional 45-day term in jail and suspended the balance of the sentence in favor of 18 months probation conditional on M.C.'s re-application to and completion of the drug court program.

[¶4]   Appellant continued to have contact with M.C. after she completed her initial drug treatment program and the two began a romantic relationship in January 2013.  Appellant visited M.C. at her residence to "hang out."  In February 2013, Appellant and M.C. began a sexual relationship.  At least one of their sexual encounters occurred in Appellant's office.  Appellant's sexual relationship with M.C. ended in May 2013.  Although Appellant was not M.C.'s supervising agent during the period of their sexual relationship, he was aware that she was under the supervision of another agent employed by the Wyoming Department of Corrections.

---

[1] Appellant was convicted of third-degree sexual assault in violation of Wyo. Stat. Ann. § 6-2-304.  That statute incorporates Wyo. Stat. Ann. § 6-2-303(a)(vii).

[¶5]    M.C. reported her relationship with Appellant to her probation officer.  That report ultimately resulted in the State charging Appellant with second-degree sexual assault pursuant to Wyo. Stat. Ann. § 6-2-303(a)(vii) (LexisNexis 2011).[2]  That statute provided as follows:

> ### § 6-2-303.  Sexual assault in the second degree.
>
> (a) Any actor who inflicts sexual intrusion on a victim commits sexual assault in the second degree if, under circumstances not constituting sexual assault in the first degree:
>
> . . .
>
> > (vii) The actor is an employee, independent contractor or volunteer of a state, county, city or town, or privately operated adult or juvenile correctional system, including but not limited to jails, penal institutions, detention centers, juvenile residential or rehabilitative facilities, adult community correctional facilities, secure treatment facilities or work release facilities, and the victim is known or should be known by the actor to be a resident of such facility or under supervision of the correctional system[.]

Appellant moved to dismiss the charge under W.R.Cr.P. 12(b)(2), asserting that the statute does not apply to probation officers or probationers.  Following a hearing, the district court denied the motion.

[¶6]    In accordance with a plea agreement, Appellant entered a conditional guilty plea to an amended charge of third-degree sexual assault under Wyo. Stat. Ann. § 6-2-304[3],

---

[2] Wyo. Stat. Ann. § 6-2-303 was amended to eliminate the term "work release facilities" following repeal of the work release program in 2014.  *See* 2014 Wyo. Sess. Laws ch. 117, § 2.

[3] Wyo. Stat. Ann. § 6-2-304 provides as follows:

> ### § 6-2-304.  Sexual assault in the third degree.
>
> (a) An actor commits sexual assault in the third degree if, under circumstances not constituting sexual assault in the first or second degree:
> > . . .

which requires "sexual contact" under any of the circumstances set forth in Wyo. Stat. Ann. § 6-2-303. He reserved the right to appeal the denial of his motion to dismiss. Appellant was sentenced to 18 to 36 months in prison, suspended in favor of two years of probation. This appeal followed.

## *STANDARD OF REVIEW*

[¶7]    In this case, we must determine whether Appellant is an "employee . . . of a state . . . correctional system" under Wyo. Stat. Ann. § 6-2-303. Resolution of this issue involves a question of statutory interpretation. We review questions of statutory interpretation *de novo*. *Spreeman v. State*, 2012 WY 88, ¶ 6, 278 P.3d 1159, 1161 (Wyo. 2012).

## *DISCUSSION*

[¶8]    In his only issue, Appellant contends the district court erred in denying his motion to dismiss because Wyo. Stat. Ann. § 6-2-303(a)(vii) does not apply to his conduct. Appellant claims that he was not an "employee . . . of a state . . . correctional system" within the meaning of the statute. Appellant concedes that he was an employee of the Department of Corrections. He claims, however, that he was not an employee of a "correctional system" under the unambiguous meaning of that term. Relying on the principles of *ejusdem generis* and *noscitur a sociis*, he contends the term "correctional system" should be interpreted in light of the facilities listed in the statute. He notes that each of the listed facilities involves confinement of the person under supervision of the correctional system, whereas probation does not.

[¶9]    Appellant further claims that interpreting "correctional system" to encompass probation is contrary to the intent of the legislature. He also addresses the final element in the statute, which requires that "the victim is known or should be known by the actor to be a resident of such facility or under supervision of the correctional system." He asserts that "under supervision of the correctional system" does not mean supervision of probationers. Appellant acknowledges that the statute's reference to work release facilities and community correctional facilities includes persons who are not physically confined, but he asserts that these examples are different from probation because probationers are not in "official detention" under Wyo. Stat. Ann. § 6-5-201(a)(ii). In sum, he claims that Wyo. Stat. Ann. § 6-2-303(a)(vii) was intended to protect inmates,

---

> (iii) The actor subjects a victim to sexual contact under any of the circumstances of W.S. 6-2-302(a)(i) through (iv) or 6-2-303(a)(i) through (vii) without inflicting sexual intrusion on the victim and without causing serious bodily injury to the victim.

residents, or certain other supervisees, but not probationers.

[¶10]  In response, the State contends that Wyoming law forbids a probation officer from having sexual relations with a probationer.  The State contends Wyo. Stat. Ann. § 6-2-303(a)(vii) is unambiguous and that the ordinary meaning of "correctional system" includes probation officers and probationers.  The State further claims that, had the legislature intended to limit the meaning of the term "correctional system" to facilities that detain inmates, it could have used the phrase "correctional facility," as it has in other statutes.  The State also contends that the principle of *ejusdem generis* is not applicable because the statute expressly states that employees of a state correctional system are "not limited to" employees of the enumerated facilities.  The State asserts that the rule of *noscitur a sociis* also does not apply because the statute is not ambiguous.  With respect to the last phrase of the statute, the State claims that by defining victims to include persons "under supervision of the correctional system" the legislature clearly intended to include probation agents and probationers.

[¶11]  In determining whether Appellant is an employee of a state correctional system, we apply our usual rules of statutory interpretation: "Our paramount consideration is the legislature's intent as reflected in the plain and ordinary meaning of the words used in the statute.  Initially, we determine whether the statute is clear or ambiguous." *Spreeman*, ¶ 10, 278 P.3d at 1162.

> A statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability.  Unless another meaning is clearly intended, words and phrases shall be taken in their ordinary and usual sense.  Conversely, a statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations.  In determining whether a statute is ambiguous we begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection.  We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute *in pari materia*.  When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction.

*Jones v. State*, 2011 WY 115, ¶ 11, 256 P.3d 536, 541 (Wyo. 2011).  As noted above, both parties assert that the statute is unambiguous.

[¶12]  We must determine what the legislature intended by the phrase "employee . . . of a

4

state . . . correctional system." It is undisputed that Appellant is an "employee" of the "state." The controversy in the present case is limited to the meaning of "correctional system." Although "correctional system" is not defined in Wyo. Stat. Ann. § 6-2-303, the common definition of "correctional system" is "A network of governmental agencies that administer a jurisdiction's prisons and parole system." Black's Law Dictionary 420 (10th ed. 2014). We also note that the term "corrections" is commonly defined as "The punishment and treatment of a criminal offender through a program of imprisonment, parole, and probation." *Id.*

[¶13] In Wyoming, the entity primarily responsible for administering Wyoming's correctional system is the Department of Corrections. Wyoming's prisons are assigned to the Department of Corrections. Wyo. Stat. Ann. § 9-2-2012(c). The departments of probation and parole have also been assigned to the Department of Corrections. *Id.* Other programs including community correction programs are within the ambit of the Department of Corrections. *Id.* All of those programs and institutions involve supervision of individuals who have been convicted of a crime. *Id.* All of those entities are part of Wyoming's correctional system.

[¶14] As indicated above, it is undisputed that Appellant was employed by the state as a probation officer. A probation officer is "an employee of the department of corrections, division of field services, who supervises a parolee or probationer." Wyo. Stat. Ann. § 7-13-401(xiv). The Department of Corrections has "general supervisory authority over state parolees and, subject to the order of the sentencing court, over probationers for whom the sentencing court requests supervision under W.S. 7-13-410(b)." Wyo. Stat. Ann. § 25-1-104(c); *see also* Wyo. Stat. Ann. § 7-13-405(a). Accordingly, in light of the common definitions of the terms "correctional system" and "corrections," as well as the statutes providing that probation officers are employees of the Department of Corrections, we conclude that a probation officer is an "employee . . . of a state . . . correctional system."

[¶15] Our interpretation of Wyo. Stat. Ann. § 6-2-303 is supported by a reading of the entire statute. As noted above, we must construe the statute as a whole, giving effect to every word, clause, and sentence. *Jones*, ¶ 11, 256 P.3d at 541. After enumerating the facilities included in the correctional system, the statute states that a victim may be "a resident of such facility *or under supervision of the correctional system*." Wyo. Stat. Ann. § 6-2-303(a)(vii) (emphasis added). Consequently, the statute indicates that a "correctional system" encompasses supervision of convicted offenders who are not confined in any detention or treatment facility. If the term "correctional system" includes only detention and treatment facilities, as Appellant contends, then there is no reason for the statute to extend to persons who are "under supervision of the correctional system."

[¶16] Appellant asserts that inclusion of the phrase "or under supervision of the correctional system" is necessary in order to extend the statute's application to victims

housed in community corrections or work release facilities because, according to Appellant, residents of such facilities are "not necessarily considered inmates or residents" of correctional facilities. We are not persuaded by Appellant's argument. The plain language of the statute provides no such limitation. The statute provides protection to victims who are "under supervision of the correctional system."

[¶17] Appellant urges us to adopt an interpretation of Wyo. Stat. Ann. § 6-2-303 that would limit its application to persons in "official detention." In support of that position, he relies upon Wyo. Stat. Ann. § 6-5-201(a)(ii).[4] That statute, which applies to Article 2 of the chapter proscribing "Offenses Against Public Administration," specifically excludes persons on probation from the definition of "official detention." His reliance is misplaced. Wyo. Stat. Ann. § 6-2-303 provides no indication that it applies only to victims who are in "official detention." Additionally, Wyo. Stat. Ann. § 6-5-201 clearly indicates that if the legislature had intended to exclude persons on probation, it knew how to do so. No such exclusion exists in Wyo. Stat. Ann. § 6-2-303(a)(vii).

[¶18] Further, Appellant claims that if the legislature had intended to extend the statute's application to persons on probation and parole, it would have specifically included victims on probation or parole. Appellant notes that similar statutes in some jurisdictions expressly apply to victims on probation or parole.[5] Appellant also notes that

---

[4] Wyo. Stat. Ann. § 6-5-201(a)(ii) provides as follows:

**§ 6-5-201. Definitions.**

(a) As used in this article:
        . . .

        (ii) "Official detention" means arrest, detention in a facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or detention in any manner and in any place for law enforcement purposes. "Official detention" does not include supervision on probation or parole or constraint incidental to release on bail[.]

[5] For example, Mont. Code Ann. § 45-5-502(5)(a) provides that consent to sexual contact "is ineffective . . . if the victim is: (i) incarcerated in an adult or juvenile correctional, detention, or treatment facility or is on probation or parole and the perpetrator is an employee, contractor, or volunteer of the supervising authority and has supervisory or disciplinary authority over the victim." Similarly, under Wis. Stat. Ann. § 940.225(2)(i), it is a crime to have "sexual contact or sexual intercourse with an individual who is on probation, parole, or extended supervision if the actor is a probation, parole, or extended supervision agent who supervises the individual, either directly or through a subordinate . . . ."

6

"Alternatively, some states have expressly required the victim be incarcerated in a facility."[6] The statutes identified by Appellant establish a varied legislative approach to the conduct at issue. Some state legislatures have opted to restrict the reach of their statutes to persons housed in correctional facilities. Others have not. Whether such conduct should be criminalized is a decision for the legislature. We must interpret the language our legislature has chosen.

[¶19] In an effort to support his claim that Wyo. Stat. Ann. § 6-2-303 applies only to employees of correctional facilities, Appellant invokes the doctrine of *ejusdem generis*. That rule holds that "general words, following an enumeration of words with specific meanings, should be construed to apply to the same general kind or class as those specifically listed." *RME Petroleum Co. v. Wyo. Dep't of Revenue*, 2007 WY 16, ¶ 46, 150 P.3d 673, 689-90 (Wyo. 2007). The rule is stated similarly in Black's Law Dictionary 631 (emphasis in original):

> A canon of construction holding that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed. • For example, in the phrase *horses, cattle, sheep, pigs, goats, or any other farm animals*, the general language *or any other farm animals* — despite its seeming breadth — would probably be held to include only four-legged, hoofed mammals typically found on farms, and thus would exclude chickens.

According to Appellant, because each of the examples listed in the statute refers to a detention or treatment facility, we must interpret "correctional system" to mean only those employees who work in correctional facilities. We do not agree.

[¶20] The statute at issue in the present case does not set forth "general words, following an enumeration of words with specific meanings," as did the rule at issue in *RME*

---

[6] Appellant cites 18 Pa. Cons. Stat. Ann. § 3124.2, which provides that

> . . . a person who is an employee or agent of the Department of Corrections or a county correctional authority, youth development center, youth forestry camp, State or county juvenile detention facility, other licensed residential facility serving children and youth, or mental health or mental retardation facility or institution commits a felony of the third degree when that person engages in sexual intercourse, deviate sexual intercourse or indecent contact with an inmate, detainee, patient or resident.

*Petroleum*. The issue in that case was whether royalties and production taxes were "direct costs of producing" oil and gas under Department of Revenue rules. The pertinent rule provided as follows:

> "Direct costs of producing" includes labor for field and production personnel whose primary responsibility is extraction of crude oil, lease condensate, natural gas and other mineral products removed from the production stream before processing; materials and supplies used for and during the production process; depreciation expense for field equipment used to take the production stream from the wellhead to the point of valuation; fuel, power and other utilities used for production and maintenance; gathering and transportation expenses from the wellhead to the point of valuation; ad valorem taxes on production and transportation equipment; intangible drilling costs, including dry hole expense; ***and other direct costs*** incurred prior to the point of valuation that are specifically attributable to producing mineral products.

*RME Petroleum*, ¶ 20, 150 P.3d at 682 (emphasis added) (quoting Department of Revenue Rules, ch. 6, § 4b(w)). We applied the doctrine of *ejusdem generis* to conclude that royalties and production taxes did not constitute "other direct costs":

> To determine whether royalties and production taxes can be considered "other direct costs" contemplated by Rule § 4b, we apply the doctrine of *ejusdem generis*. "Such general words, following an enumeration of words with specific meanings, should be construed to apply to the same general kind or class as those specifically listed." *Powder River Coal [v. State Bd. of Equalization*, 2002 WY 5], ¶ 19, 38 P.3d [423,] 429 [(Wyo. 2002)]. Applying this principle to Rule § 4b, one easily concludes that the detailed list of costs are not in the same class or of the same nature as royalties or production taxes.

*RME Petroleum*, ¶ 46, 150 P.3d at 689-90. Unlike the rule at issue in *RME Petroleum*, the statute in the present case specifically provides that employees of a state correctional system are "not limited to" employees of the enumerated facilities. Inclusion of this phrase suggests that the meaning of "correctional system" should not be limited by reference to the examples listed in the statute. Moreover, Wyo. Stat. Ann. § 6-2-303 does not contain "general words" in the manner of "and other *x*," and such words do not

follow a list of specific examples.

[¶21]  We note that other jurisdictions have also determined that application of *ejusdem generis* is not appropriate every time a list of specific examples is accompanied by a general term.  Courts in these jurisdictions have held, first, that the rule of *ejusdem generis* applies only to general words *following* an enumeration of specific examples, and second, that the phrase "including, but not limited to" is inconsistent with the application of the rule.  In *United States v. West*, 671 F.3d 1195, 1201 (10th Cir. 2012), the court rejected application of the rule to a federal statute defining a "playground" as "an outdoor public facility 'containing three or more separate apparatus intended for the recreation of children including, but not limited to, sliding boards, swingsets, and teeterboards.'  21 U.S.C. § 860(e)(1)."  The court noted that the Ninth Circuit Court of Appeals, in *United States v. Migi*, 329 F.3d 1085 (9th Cir. 2003), had rejected application of the rule to the same statute based, in part, on inclusion of the phrase "including, but not limited to":

> The principle of *ejusdem generis* does not apply here because the statute's plain meaning is apparent. An application of *ejusdem generis* would narrow Congress's definition of "children" from people "under 18 years of age" to those young enough to be able to play on swingsets, slides, and teeter-boards. In addition, we need not apply *ejusdem generis* because Congress modified its list of examples with the phrase "including, but not limited to." That phrase "mitigates the sometimes unfortunate results of rigid application of the *ejusdem generis* rule."

*West*, 671 F.3d at 1199 (quoting *Migi*, 329 F.3d at 1088-89) (footnote omitted).  The Tenth Circuit reached the same conclusion and also noted that courts have historically employed the principle of *ejusdem generis* to limit general terms *following* specific terms:

> As an interpretative aid, the principle of *ejusdem generis*, properly applied, is a canon of construction that "[o]rdinarily . . . limits general terms which follow specific ones to matters similar to those specified." *Gooch v. United States*, 297 U.S. 124, 128, 56 S.Ct. 395, 80 L.Ed. 522 (1936). But we resort to the principle "not to obscure and defeat the intent and purpose of Congress, but to elucidate its words and effectuate its intent." [*United States v.*] *Alpers*, 338 U.S. [680,] 682[, 70 S.Ct. 352, 94 L.Ed. 457 (1950)]. "[W]e do not woodenly apply limiting principles every time Congress includes a specific example along with a general phrase." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 227, 128 S.Ct. 831, 169 L.Ed.2d 680 (2008).

9

. . .

> [C]ourts have historically employed the principle of *ejusdem generis* to *limit general terms following specific terms*. *See* Black's Law Dictionary 556 (8th ed. 2004). In § 860(e)(1), however, Congress did not employ specific terms followed by general terms in providing examples of "apparatus." Rather Congress described "apparatus" as "*including, but not limited to*, sliding boards, swingsets, and teeterboards." 21 U.S.C. § 860(e)(1) (emphasis added). In the analogous context of interpreting a contract that contained the phrase "including, but not limited to," then Judge Alito told us that "[t]he rule of *ejusdem generis* applies only if the provision in question does not express a contrary intent. Thus, since the phrase 'including, but not limited to' plainly expresses a contrary intent, the doctrine of *ejusdem generis* is inapplicable." *Cooper Distrib. Co. v. Amana Refrig., Inc.*, 63 F.3d 262, [280] (3d Cir. 1995) (Alito, J.). Notably, this is exactly what the Ninth Circuit told us in *Migi*, wherein the court refused to apply *ejusdem generis* "because Congress modified its list of examples [in § 860(e)(1)] with the phrase 'including, but not limited to.'" *Migi*, 329 F.3d at 1089; *see also Cintech Indus. Coatings, Inc. v. Bennett Indus., Inc.*, 85 F.3d 1198, 1202-03 (6th Cir. 1996) (following *Cooper Distrib.*).

*West*, 671 F.3d at 1200-01 (footnotes omitted; emphasis in original). *See also NISH v. Rumsfeld*, 348 F.3d 1263, 1268 (10th Cir. 2003) ("Because *ejusdem generis* is only to be applied to determine the scope of a general word that *follows* a specific term, that canon has no relevance here.") (emphasis in original).

[¶22] Similarly, in *Lyman v. Town of Bow Mar*, 188 Colo. 216, 221, 533 P.2d 1129, 1132 (1975), the Colorado Supreme Court rejected application of *ejusdem generis* to a statute defining a "public utility" as "one or more persons or corporations that provide electric or communication service to the public by means of electric or communication facilities and shall include any city, county, special district, or public corporation that provides electric or communication service to the public by means of electric or communication facilities." The court concluded that

> [A]s we said in *Martinez* [*v. People*, 111 Colo. 52, 137 P.2d 690 (1943)], the *ejusdem generis* rule is used to construe general words in a statute "as applicable only to persons or things of the same general nature or class as those

10

enumerated" when "general words *follow* the enumeration of particular classes of persons or things." 111 Colo. at 57-58, 137 P.2d at 692-93 [emphasis added]. In the statute in question here, the general words "public utility" *precede* the specific enumeration of examples. Further, the word "include" is ordinarily used as a word of extension or enlargement, and we find that it was so used in this definition. To hold otherwise here would transmogrify the word "include" into the word "mean." *See Helvering v. Morgan's, Inc.*, 293 U.S. 121, 55 S.Ct. 60, 79 L.Ed. 232 (1934); *American Surety Co. of New York v. Marotta*, 287 U.S. 513, 53 S.Ct. 260, 77 L.Ed. 466 (1933).

*Lyman*, 533 P.2d at 1133 (emphasis in original). Consistent with the reasoning of these cases, we conclude that the rule of *ejusdem generis* does not provide an appropriate foundation for our interpretation of Wyo. Stat. Ann. § 6-2-303.

[¶23] For the same reasons, we are also not persuaded that the doctrine of *noscitur a sociis* should guide our interpretation of the statute. Similar to *ejusdem generis*, *noscitur a sociis* counsels "that general and specific words are associated with and take color from each other, restricting general words to a sense analogous to the less general." *Sponsel v. Park County*, 2006 WY 6, ¶ 16, 126 P.3d 105, 110 (Wyo. 2006) (citing Black's Law Dictionary 1087 (8th ed. 2004)). Because the statute specifically provides that employees of the state correctional system are "not limited to" employees of the enumerated facilities, the doctrine of *noscitur a sociis* does not provide a useful guide to interpretation of the statute. Further, *noscitur a sociis* is helpful only in discovering the meaning of ambiguous terms. *See United States v. Stevens*, 559 U.S. 460, 474, 130 S.Ct. 1577, 1588, 176 L.Ed.2d 435 (2010) ("As that canon recognizes, an ambiguous term may be given more precise content by the neighboring words with which it is associated.") (citation and quotation marks omitted). As indicated above, we conclude that the statute is unambiguous. Accordingly, there is no need to resort to the principle of *noscitur a sociis* to aid our interpretation of the statute.

[¶24] Appellant also claims that his interpretation of Wyo. Stat. Ann. § 6-2-303 is supported by the statute's legislative history, and that the statute should be construed in his favor under the rule of lenity. These claims, however, are also unpersuasive. The rule of lenity applies only in cases of statutory ambiguity. *Jones*, ¶ 10, 256 P.3d at 541 (citing *Crain v. State*, 2009 WY 128, ¶ 10, 218 P.3d 934, 940 (Wyo. 2009)). Because we find the statute to be unambiguous, the rule of lenity does not apply.

[¶25] With respect to the statute's legislative history, Appellant points to the title of the proposed bill that enacted Wyo. Stat. Ann. § 6-2-303(a)(vii). The title provides as follows: "AN ACT relating to crimes and offenses; establishing a crime for sex offenses

11

committed by corrections staff against persons under supervision by the corrections facility as specified; providing that marriage or consent by the victim is not a defense to specified offenses; and providing for an effective date." 2009 Wyo. Sess. Laws ch. 87. We have stated that "the language of the title cannot overcome the plain intent manifested in the language used in the body of the act, yet where that language is of the same purport as the language used in the body of the act, it is corroborative of the legislative intent." *City of Cheyenne v. Bd. of County Comm'rs of Laramie*, 2012 WY 156, ¶ 15, 290 P.3d 1057, 1061 (Wyo. 2012). The body of the statute at issue, unlike the headnotes inserted in the bill by the Legislative Service Office, uses the phrase "correctional system" with respect to both the employee of a state "correctional system" and the victim under supervision of the state "correctional system." It does not use the term "correctional facility." As a result, the language of the headnote is not "of the same purport as the language used in the body of the act." *City of Cheyenne*, ¶ 15, 290 P.3d at 1061. Accordingly, the language of the title cannot overcome the plain intent manifested in the language of the statute.

[¶26] In sum, we conclude that Wyo. Stat. Ann. § 6-2-303 is unambiguous. In light of the fact that probation officers are employees of the Department of Corrections, and considering Wyo. Stat. Ann. § 6-2-303 as a whole, we conclude that the statute applies to persons who are employed as probation officers. We find no error in the district court's denial of Appellant's motion to dismiss.

[¶27] Affirmed.